## HARBER v. SEXTON & SON.

66  211
93  502
66  211
136 140

1. **Tax Sale and Deed:** TAX PAID BEFORE SALE: DEED INVALID: EVIDENCE. Action to set aside a tax deed on the ground that the tax was paid before the sale; and, upon consideration of the evidence, (see opinion,) *held* that the prior payment of the tax was established.

2. **New Trial:** NEWLY-DISCOVERED EVIDENCE: INSUFFICIENT SHOWING. Where a new trial was asked on the ground of newly-discovered evidence. but it was not shown that the defendants did not have knowledge of the newly-discovered facts at the time of the first trial, *held* that the motion was properly overruled, though it was shown that they were non-residents of the state, and the preparation of the case devolved exclusively upon their attorneys, and that one of the attorneys had no knowledge of the alleged new facts.

3. ———: ———: CHARACTER OF EVIDENCE INSUFFICIENT. A new trial should not be granted upon the ground of newly-discovered evidence, when such evidence, if admitted, could not change the result.

4. **Tax Sale and Deed**: TAX PAID BEFORE SALE: PAYMENT OF SUBSE-
QUENT TAXES BY PURCHASER: DEED SET ASIDE IN EQUITY: REIM-
BURSEMENT OF PURCHASER: STATUTE OF LIMITATIONS. Where land
was sold for taxes which had before been paid, and the tax deed taken
pursuant to the sale was therefore invalid, but the owner of the land
allowed the tax purchaser, in good faith, to pay the taxes on the land
for more than twenty years, and then called him into a court of equity,
where his invalid tax title was set aside, *held* (1) that the purchaser was
entitled to judgment against the owner of the land for all the subse-
quent taxes paid by him, with six per cent interest on each payment
from the date thereof, and to have the judgment made a lien on the
land; and (2) that the statute of limitations had no application to the
case, since the right to be reimbursed was a mere equity incidental to
the relief asked by and granted to plaintiff. *Thode v. Spofford*, 65
Iowa, 294, distinguished.

*Appeal from Dallas Circuit Court.*

TUESDAY, JUNE 2.

ACTION in equity to set aside a tax deed of certain land in
Dallas county. There was a decree for the plaintiff. The
defendants appeal.

*Barcroft & Bowen*, for appellants.

*H. E Long*, for appellee.

ADAMS, J.—I. The validity of the tax deed is assailed
upon several grounds. It will be sufficient to consider one
of them. The plaintiff avers that the tax for
which the land was sold had been paid, and our
examination of the evidence has led us to the
conclusion that such is the fact. The tax in ques-
tion is that for 1859. One Howard Harber, son of the plaintiff,
testifies that he paid the tax himself, took a receipt therefor,
and delivered it to his mother. Mrs. Harber testifies that she
gave her son the money, with instructions to pay the tax;
that he went to Adel, the county seat, for that purpose; that
he returned with a receipt for the tax and gave it to her.
The plaintiff testifies that he had the receipt in his possession,

*Marginal note:* 1. TAX sale and deed: tax paid before sale: deed invalid: evidence.

and afterwards lost it, he thinks, upon an occasion when he fell into a creek. He remembers that he had the receipt at that time, with other papers, and believes that he lost it when drying the papers. The evidence tending to show that the tax was not paid consists of the fact that no entry of payment was made upon the tax records. The defendant's theory is that the witnesses for the plaintiff were mistaken. They regard this as more probable than that the treasurer or clerk who received the tax should forget to make entry of payment.

The defendant introduced evidence showing that in November, 1859, some one paid the tax on the land for 1857. Their theory is that it was the tax of 1857 which was paid by Howard Harber, and that the receipt seen by the plaintiff and his wife was the receipt for that tax. We cannot say that this is impossible, but there are several reasons why we cannot regard it as probable. The plaintiff at the time of his purchase of this land resided in Indiana. The deed to him appears to have been executed in February, 1859. The land was bought with the understanding that all taxes had been paid. The plaintiff, with his family, removed to Iowa in the summer of 1859, and remained until 1861, when they returned to Indiana. During the time they were in Iowa they paid only one tax, and it seems certain that it was the tax of 1859, unless it was the tax of 1857, as the defendants contend. But that tax, at the time of the purchase, was supposed to be paid. It is true, it was not paid at that time, nor until November of that year; but, as it appears to have been the duty of the plaintiff's grantor to pay it, it is not unreasonable to suppose that he is the person who did pay it. It is reasonably certain that if the plaintiff and his wife had found this tax delinquent, contrary to their expectation, and had been obliged to sustain the payment as a loss, such fact would have made an impression upon their minds. If Howard Harber was sent in November, 1859, to pay a tax, he was not sent to pay the tax of 1859, nor any tax which his parents expected to be called upon to pay. What is more, the

plaintiff testified to an attempt to sell the land about the time when he lost the receipt. He was absent from home, indeed, at that time, with his receipt, for the purpose of making a sale. He had his receipt with him for the purpose of showing the payment, and made a special examination of it with the man to whom he was endeavoring to sell, and relied upon it as evidence that the tax of 1859, and of years prior thereto, had been paid. It seems highly probable, and almost certain, if the witness is honest, that his testimony must be correct.

Both Howard Harber and his mother fix the time of payment as 1860. If they are correct in this, the time of payment would show conclusively that the tax paid was not that of 1857. But the defendants insist that the witnesses have forgotten. They place great stress upon the length of time which has elapsed, which they say must have been about twenty-four years. Persons of only ordinary memory could hardly be expected to remember so long the year of the payment of a tax, unless their memory was aided by reference to one or more important events, whose dates could be more easily retained. But, by referring to the testimony, we find that the memory of the witnesses was aided by reference to the dates of important events. They came to Iowa in 1859, and returned to Indiana in 1861. They paid one tax in that time, and they claim to remember that they paid it the year after they came to the state. It is certainly not incredible that their memory thus aided should be correct, and especially when we consider that that was the first year that they could properly be called upon to pay a tax.

One other event of importance remains to be mentioned. About the last of February or first of March, 1860, the Harbers negotiated a sale of the land to one Goodwin. This was testified to by Goodwin, and his testimony is undisputed. Mrs. Harber testified that at the time of the payment they were about to trade the land to Goodwin. It is said, however, that there was direct evidence that the payment was not in 1860, but in 1859. One O. H. Harber testified that the

money was furnished Howard Harber to pay a tax in 1859. O. H. Harber was brother to Howard. At the time he testified he said he was 38 years old, This, we infer, was in 1884. O. H. Harber, then, in 1859, must have been about eleven years old. He does not appear to have had anything to do with the payment, and merely saw his mother give Howard the money. It is true, he claims that his memory was aided by reference to the time of coming to Iowa. But we cannot attach much importance to his testimony. He says that it was the first year that they lived in Iowa; and so it was, according to Mrs. Harber's testimony, in the sense that it was within a year from the time they came. He says that they had lived here but a few months, and that would also be substantially true, if they came in the summer of 1859, and the the tax was paid before the negotiation of the trade with Goodwin. Now, while there is a presumption of non-payment of the tax in question, arising from the deed, we are unable to see upon what principle we should be justified in saying that the presumption is not overcome by such evidence as that above set out. We might say, as the defendants do, that the witnesses could not remember what they claim to remember; but such assertion would be unwarranted. We reach the conclusion, then, that according to the preponderance of the evidence the tax for which the land was sold had been paid.

II. The defendants moved for a new trial on the ground of newly-discovered evidence. The court overruled the motion, and they insist that in this there was error. In our opinion there were several reasons sufficient to justify the court in overruling the motion. The alleged newly-discovered evidence, it is claimed, would have contradicted the plaintiff as a witness. The affidavits of one Cole and one White were filed for the purpose of showing that they heard the plaintiff, prior to the trial, make statements inconsistent with his testimony. But it is not shown that the defendants did not have knowledge of the statements. One of their attorneys shows that he did

*2. NEW trial: newly-discovered evidence: insufficient showing*

not himself have knowledge of the statements before the trial. In addition, he swears that the defendants resided in the state of New York, and that the preparation of the case devolved exclusively upon the attorneys. But in our opinion that is not sufficient. *Fikes v. Bentley*, Hempst., 61.

While we regard the ground above stated as sufficient to sustain the ruling below, we prefer to state one other ground,

3. ——:——: character of evidence insufficient.

and that is that we do not think that the alleged newly-discovered evidence, if admitted upon another trial, would change the result. The alleged evidence was to the effect that a year or two before the trial the plaintiff, in speaking of the tax sale, did not claim that the tax of 1859 had been paid, but gave as a reason why it was not paid that he was at the time of unsound mind and unable to do business. But it is easy to see how the persons who claim to have heard such statement might have been mistaken. The plaintiff testifies that he distinctly understood that the tax for 1859 was paid, and did not suppose, indeed, that the land was sold for that year, but supposed that it was sold for a subsequent year, and did not learn to the contrary until June, 1883, and the action appears to have been commenced on the fifth day of July, 1883. We think it entirely probable that prior to June, 1883, the plaintiff, in speaking of the tax sale, assumed that it was made for a tax not paid, because such appears to have been his understanding. The conflict between his testimony and the alleged statements can be reconciled by supposing that when he spoke of the tax sale he did not understand that it was made for the tax of the year 1859, but a later year; whereas the persons hearing his statements, and knowing that the sale was made for the tax of 1859, supposed that the plaintiff was speaking of the tax of that year. In our opinion, the introduction of the alleged newly-discovered evidence could have had but little weight, and would not have led to a different result. Such being our opinion, we have to say that we think the motion, upon this

Harber v. Sexton & Son.

ground alone, if upon no other, was properly overruled.   Hil. New Trials, 493, and cases cited.

III.   The court below held that the defendants were entitled to be reimbursed for the taxes paid by them during the five years last preceding the commencement of the action.   The defendants contend that, if the tax deed is to be set aside, they should be allowed all the taxes paid, and interest at six per cent from the time of the respective payments. In our opinion the defendants' position in this respect must be sustained.   The defendants purchased the land and paid subsequent taxes in the utmost good faith.   It does not appear that they knew, or had any means of knowing, that the tax for which the land was sold had been paid.   If the plaintiff had exercised any diligence in the matter, he might have ascertained that the sale was made for a year for which he claimed that the tax was paid; and, had he done so, and produced to the defendants any evidence of the payment, a settlement might and probably would have been reached long ago, in which the rights of all parties would have been respected.    We do not think that the plaintiff is entitled to speculate upon the defendants' misfortune.   The plainest principles of equity forbid that he should do it.   It is not a case where the defendants have been sleeping upon their rights. They did not, indeed, appear to have any claim for reimbursement for these taxes until the plaintiff had offered some evidence of payment; nor would they now have any claim if the tax deed had been adjudged valid.   The plaintiff has seen fit to bring the defendants into a court of equity.   The defendants' right to reimbursement is an incident to the relief granted the plaintiff.   He has neglected the taxes, and has stood by and seen the defendant pay them under the reasonable supposition that the tax sale and deed were valid.   The plaintiff has had the benefit of the payment, and not entirely without his fault.

It not only seems to us equitable that the defendant should

4. TAX sale and deed: tax paid before sale: payment of subsequent taxes by purchaser: deed set aside in equity: reimbursement of purchaser: statute of limitations.

be reimbursed, but we do not think that the statute of limitations has any application. We do not see how that can be set up as a bar to a right which is a mere incidental equity. It is true that in *Thode v. Spofford*, 65 Iowa, 294, the court denied the defendants any relief. That case is relied on by the plaintiff. But in that case the purchasers should have known that they were not obtaining a good title, and were paying their money at their peril. Possibly, if in the case at bar the tax deed had been invalid for some of the other causes assigned by the plaintiff, the defendants' right to reimbursement would have been different, but we have not been able to conclude that the deed was invalid upon those grounds. We think the plaintiff should have been adjudged to reimburse the defendants for all the taxes which they paid, except that for the year 1859, which we find had been previously paid by the plaintiff. They should, too, be allowed six per cent interest upon the payments from their respective dates.

The court below rendered judgment in the defendants' favor for the amount paid by them within five years, and made the same a special lien upon the land, and decreed that, if the amount should not be paid within ninety days, the defendants should have an execution against the land. We do not understand that either of the parties complain of the mode of enforcing the defendants' rights. We have concluded, therefore, that the decree should be allowed to stand, with such modifications only as we have pointed out. The payments, as we understand, are shown, and the dates thereof. The interest can be easily computed to the date of the decree, and a decree entered accordingly.

MODIFIED AND AFFIRMED.