JOHN M. HOBAN, PLAINTIFF BELOW, v. SANDFORD & STILLMAN COMPANY, DEFENDANT BELOW.

Argued November 14, 1899—Decided February 26, 1900.

1. Upon a rule to show cause why a verdict should not be set aside and a new trial had on the ground of newly-discovered evidence, the newly-discovered evidence must be of such a character that it would probably change the result. It must be such evidence as would probably produce on another trial the opposite result.

2. The question whether it would probably change the result upon a new trial, or probably produce the opposite result, is one for the decision of the court before whom the rule to show cause is to be heard and determined. The question whether a new trial under all the circumstances of the newly-discovered evidence should be granted is for the discretion of the court before whom the rule is heard.

3. The party seeking a new trial upon newly-discovered evidence, must show by evidence, not merely general but circumstantial in its character, that due diligence was exercised to produce it on the former trial, and especially is this so after a second trial is had, and the need of it has been or should have been discovered.

4. If the newly-discovered evidence is of the same general character and cumulative of that produced on the trial, and merely additional or corroborative of such evidence, and merely multiplying the number of witnesses on the one side or the other, a new trial will not be granted.

On plaintiff's rule to show cause.

Before MAGIE, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff, *Warren Dixon.*

For the defendant, *James B. Vredenburgh* and *Charles C. Black.*

The opinion of the court was delivered by

LIPPINCOTT, J.  Although the rule to show cause in this case in behalf of the plaintiff is a general one, yet it was allowed on the ground of newly-discovered evidence, and must be so treated.

The cause was tried once before at the Circuit, and resulted in a verdict for the plaintiff.  A rule to show cause was allowed the defendant, and after argument this court made the rule absolute and directed a new trial.  Upon the new trial the same evidence *in toto* was produced on both sides, and the trial justice, following the opinion in the Supreme Court, directed a verdict for the defendant, to which direction an exception to the plaintiff was allowed, which exception was reserved in the allowance of this rule.

The evidence upon both trials shows that the plaintiff, on the 6th day of April, 1897, was in the employment of the defendant company, engaged as one of a gang of workmen in charge of a foreman in placing capping upon piling in the construction of a railroad bridge over Berry's creek, in the county of Bergen. He commenced this employment on the morning of this day, and whilst at his work, with other workmen in a gang with a foreman in charge of them, between seven and eight o'clock, in the attempt to place a cap upon one of the bents of piling, a rope in use in the work broke, and the cap fell upon him and very seriously injured him. The work of placing the capping upon the bents upon the piling was progressing on the westerly side of the creek, and from the creek or the edge thereof westwardly therefrom. At some distance westwardly from the creek a derrick or pile-fall had been placed, which; with an engine, drums and a gypsy-drum and blocks, and the rope attached to the same, the work of driving and capping the piling was being conducted.

The general operation of the work seemed, as shown by the evidence to have been, that a *large* rope, to the end of which was attached a chain, passed over the top of the piling machine, or pile-fall, as it may be called, and was taken out to where the capping timbers lay in the creek or the edge thereof. The other end of this large rope was twisted about a drum connected with the engine at or about where the pile-driving machine lay. The chain end of the rope was attached to the capping piece of lumber in the creek. The engine was set going, the drum revolved, and thus the capping timber was dragged, or telegraphed, as the phrase used is, along the ground until it reached the foot of the machine. There another and *smaller* rope was attached to the capping piece or timber at its centre, and that smaller rope was taken then to the creek or the edge thereof, and then placed through a pulley which was attached to one of the piling in the creek, and the same rope brought back to the pile-fall and wound around another drum called a gypsy, and with the ropes in

this position, the drum around which the large rope was wound, which passed over the head of the pile-fall, was set in motion. This also set the gypsy-drum in motion, drawing the rope, so that the timber was pulled out from the pile-fall and suspended in the air. The rope over the head of the engine was then slackened and the timber descended until the timber was nearly level with the top of the bent and at such a distance from it as was proper in the work. The rope to the pulley was then set in motion, the timber again went into the air and the process repeated until the timber reached the place intended, where it was taken in hand by the workmen with whom the plaintiff was engaged and placed upon the piling. The work of the men with whom the plaintiff was engaged then was to straighten the timber, so that when it swung down it would come into the proper position on the pile. The plaintiff was standing abreast of this particular piece of capping, in order to get it into this position, when the *smaller* rope, which in connection with the larger one was holding it in position, parted and the timber fell upon him. This smaller rope was seven-eighths of an inch in thickness.

On the morning of the accident Whalen, one of the foremen, directed some of the workmen of the gang in which the plaintiff was engaged to bring this rope from the place where it with other ropes was kept for use in this work. It was a part of a coil of one thousand feet of rope, seven-eighths of an inch thick and from two hundred and fifty to three hundred feet long, and when this was obtained it was in connection with the larger rope, which ran over the head of the machine used by the workmen in rigging the machine for the work.

On the trials of this case much controversy arose in relation to this question whether the rope was of sufficient length. This question arose because upon the length of the ropes much depended in respect to the strength thereof.

The main controversy, therefore, was over the sufficiency of strength of the ropes. On this subject no question was raised over the sufficiency in the strength of the larger rope

or pile-fall rope—that is, the rope over the head of the machine. The question arose over the smaller or seven-eighths-inch rope attached to the gypsy-drum. Whether it was sufficient in strength by reason of want of proper thickness was the controverted question in the case.

It was clearly shown on the trials that ropes were there provided of greater thickness by the defendants for use by the workmen, of ample length, thickness and strength for this work, and therefore the question of whether the master had performed its duty in furnishing proper ropes for use of the workmen was submitted to the jury to decide, and it resulted in a verdict for the plaintiff for a large amount. A rule to show cause why the verdict should not be set aside was allowed.

The opinion of this court, after the argument of this rule to show cause, is as follows :

" PER CURIAM.

" This rule must be made absolute because the verdict was against the great weight of evidence and the charge of the court.

" The preponderance of the evidence was that the company had provided for use in such work as Hoban was on, ropes of the size for which his witnesses declared was safe for use. The rope used which broke was less in size and was selected by a foreman working with the gang.

" For the misjudgment of the foreman in such selection the company was not liable (*Maher* v. *Thropp*, 30 *Vroom* 186), and the court so told the jury."

On the first and second trials there seemed to be no question whatever at what distance from the creek, or the first bent of piles in or at the edge of the creek, the piling machine and engine were placed, and that all the ropes which were provided there for use were of sufficient length. On this rule to show cause it is attempted to be shown that this *small* seventh-eighths-inch rope which was used was the only one which was long enough to be used. It is attempted now, according to the affidavits taken on this rule, to show that

the machine was at a much greater distance from the edge of the creek westwardly, and at a much greater distance westwardly from the pilings which were then driven, and from the place where the plaintiff was at work, and at such a much greater distance, that the ropes which were shown to have been furnished by the defendant for use, and which were of sufficient size and strength, others than the one which was used were not of sufficient length to use, and that, therefore, this was the only one of sufficient length to be used, and therefore there was no choice at all which could be exercised by the foreman in the selection of the ropes; that this was the only one which could be used, and as it was insufficient, the liability of the defendant had arisen so far as that the verdict directed for the defendant on the second trial should be set aside and the question of liability once again submitted to the jury.

This position, therefore, requires us to examine the evidence in the case as tried, in order to determine whether the evidence taken under the rule is what is legally denominated newly discovered.

Under the evidence at the trials the piling which had already been driven was in bents—that is, in rows—from the creek outwardly towards the spot where the pile-fall was placed. In this respect the very highest numbers sworn to were seven or eight. Eight is the very highest. The bent to the piling of which the pulley was attached in the creek was upon the edge of it, and after that the highest number of bents sworn to was seven. Some witnesses swear to only seven bents in all. All of the witnesses, including the plaintiff, with much positiveness identify the seven or eight bents. No witnesses attempt to say that there were more, and this was a subject to which the attention of all the witnesses, workmen and others, including the plaintiff, was particularly directed. It is undisputed, under the evidence, that these bents were at the greatest only ten feet apart, making eighty feet of space at most. Then the evidence is clear that the machine stood fifteen feet west of the westwardly bent, which

at most would, giving effect to the most liberal calculation under the evidence, make the machine stand ninety-five feet from the first bent of piling at or in the edge of the creek. This is established by all the evidence in the first and second trials, and it is not disputed, and it was so material to the evidence, as to the strength of rope required, as to be almost exactly established by the plaintiff. The plaintiff was established to have been at work at the fourth bent, outwardly, westwardly, from the creek toward the machine, which, at the time of the accident, would place him about fifty-five to sixty-feet from the machine. This is established beyond contradiction, as it seems to me, and it was necessary and material for the plaintiff to establish this on the question of the strength of the rope, for the lesser the distance from the machine the lesser the strength of the rope needed, and if at the least strength needed, the rope having parted, the greater the degree of negligence of the defendant as not having furnished a rope of sufficient strength, which was the actual question to be presented to the jury. The testimony was protracted and voluminous on this subject of the exact distances, was controverted over and over again in the case, and the attention of every witness who had the opportunity of observation was directed to this subject.

· By the newly-discovered evidence it is attempted to show that, at the time of the accident, this pile-fall and engine occupied a position about two hundred feet from the first bent of piling in or at the edge of the creek, and that, therefore, the smaller working rope attached to the piling should have been over four hundred feet in length. Instead of eight bents of piles proved in the two trials which had been already driven, the attempt is to show that seventeen or eighteen bents had been driven, ten feet apart, up to a mud hole, which was about the place where the seventeenth or eighteenth bent had been driven. This mud hole, it is attempted to be shown, was about twenty-five or thirty feet wide, and that the machine stood some ten feet westwardly of that, bringing the distance up to over two hundred feet.

At once this wide diversion of facts, after so long a time, attracts curiosity as to the method by which it is made to appear.

Caughly, a witness, living at Rutherford some distance away, called under the rule, testifies that the day or the day after the accident he went down to the place of accident and observed the pile-driver, and that it was over two hundred feet westwardly from the creek, and that piles had been driven from this pile-driver to the creek, and that he saw a mud hole there; that the pile-driver was on the west side of it, and that lately he had counted the bents from this hole to the creek, and that the mud hole was between the seventeenth and eighteenth pile. He was a friend of Mr. Hoban and often visited him before and after the accident, and yet had never spoken to him about it till after the second trial, and then, at the request of Mr. Hoban, he made an appointment with a Mr. Gardner, the agent of the plaintiff, to investigate what evidence could be produced, to go to this place and point out what he saw after this accident.

Domench Lapenter, another witness, a friend also of Hoban, living also at Rutherford, went to this place and observed the same situation. His evidence is almost identical with that of Caughly, as to the location that morning, and subsequently in his observation of the place. He spoke to Caughly about it, and Caughly spoke to Hoban, and Hoban requested him to go there again and to see Gardner and take his affidavit.

George Roseman, a friend of the plaintiff, another witness, living also in Rutherford, went down there at three o'clock the day of the accident, saw the machine was one hundred and seventy to two hundred feet west of the creek. Since that time he has counted the bents to that point, and thinks there were seventeen.

Joseph Lapenter, a witness, friend of the plaintiff, testifies to his observation on the day of the accident, and his recollection is the same as Roseman's, substantially.

There are some other witnesses who only have observed the place of accident lately, and testify that a mud hole still

exists there, and place the mud hole at the distance of about one hundred and seventy feet from the creek.

Hoban, the plaintiff, testifies that after the second trial Mr. Gardner gave him the printed book and he read it, and he saw that the witnesses had sworn there were seven or nine bents of piling. He says, "I thought the distance a good deal further, and he asked Caughly if he could locate where the machine was that morning; he said he thought he could locate whereabout it did stand." Caughly came in to see him just as he was looking over the book. He says Caughly did locate it, and came back and told him, and he told Gardner. He says, on cross-examination, that he considered it then of importance where the pile-driver was, because of the length of the ropes provided for use—that is, that the seven-eighths-inch rope was the only rope long enough for use. The plaint-iff was a witness in his own behalf on both trials.

Mr. Gardner, the attorney of Hoban, testifies that after he gave Hoban the book to read, and Hoban informed him as to the facts these witnesses had discovered, he went with them or some of them to the place; that previous to that he had paid no attention to this matter, although he had visited the place several times. He says he has investigated over two hundred accident causes.

On this rule evidence was also taken in behalf of the defendant. Whalen, Ryan, Doan, O'Day, Lear, Blyer, Watson, Sandford and Hughes, all workmen, and others at the place of the accident, and there at work on the day of the accident and the day after, and they all testify in the most positive terms as to the location of the machine at the time of the accident, and the number of the bents already driven from the edge of the creek westwardly to within fifteen feet of the machine. The distance is calculated by all of them at less than one hundred feet, and the number of bents at seven or eight and no more. This is their evidence on the first and second trials both and on this rule. The plaintiff himself on this rule makes no mention of the distance, of his own knowledge, as he did on the trials, and no one could know better

than he could, being there at work at the time.   No work-
man of the many at work there at the time of the accident
testifies on either trial to any such location as the plaintiff
contends for upon the evidence on this rule.    Every witness,
including the plaintiff, resworn upon a new trial, would, in
order to establish such a position, refute his own evidence in
this respect and tell a different story.

The evidence in the two trials, witnesses for the plaintiff
on this rule, also the counter affidavits taken by the defend-
ant on the rule, can all be read and considered upon this
question of the power and discretion of the court to order a
new trial.   *Zeller* v. *Griffith, Administrator,* 89 *Ind.* 80 ;  *Finch*
v. *Green,* 16 *Minn.* 355 ;  3 *Gra. & Wat. N. T.* 1069 ;  *Kirk* v•
*Rickerson,* 17 *Vroom* 13.

Taking the location of the machine as it was stated on the
trials, the small rope was ample in length to do this work if
it had been sufficient in strength.    It is clearly established
by the evidence that this was at least two hundred and fifty
feet long, a part of a coil of one thousand feet which had
been cut into parts.    It did the work, taking the location of
the machine into consideration, it had landed three or four
capping timbers in safety, and conclusively it is established
that it was long enough.    The plaintiff's counsel, in his brief
on the rule to show cause, on the verdict distinctly states, as
a result of the evidence, that a rope two hundred and fifty
feet long was ample in length.

The evidence upon the rule to show cause of these wit-
nesses in behalf of the plaintiff, as to the newly-discovered
location of this machine, has the appearance of a preparation
for a change of ground of liability so distinct and so different
from that presented on the two trials as to give rise to the
belief that it is either mistaken or untrue, and it would also
appear that they have sworn to an inference from the state
of the piling after it had been finished up to the point at
which they saw it in June, 1899.

Taking the evidence on the rule and giving it due effect
after examining the cross-examination, it is still perceived

that if it was submitted to the jury, still the overwhelming weight of it all would be that the defendant had exercised the care required by law in furnishing safe ropes for the plaintiff to use, of an ample length for such use, and that the accident was caused by the mistake or neglect of the foreman in selecting a wrong rope.

It is a demonstration of fact, from the evidence, that a rope of two hundred and fifty feet in length, of sufficient thickness, would have been safe. Such ropes, several in number, were supplied, from which a selection could have been made by the foreman or others there in the employment of the defendant as co-servants of the plaintiff. Of course the nearer to the pile-fall the bents were driven the less length of rope was needed.

There are other facts which it seems would clearly demonstrate that no reliance can be placed in the accuracy of witnesses for the plaintiff, sworn upon this rule.

The pile-fall rope—that is, the larger rope—has been, without dispute, on both the trials and upon this rule, shown to have been one hundred and thirty-five feet in length. This is established by the evidence of five or six witnesses, and it is uncontradicted. If the pile-fall rope was one hundred and thirty-five feet long it would not reach beyond the sixth or seventh bent of piles—certainly not beyond the eighth. Under the evidence it took fifteen feet around the drum. The pile-driver was forty-five feet high, and that took forty-five more to the top of the pile-driver, and it would require all of the balance of seventy-five feet to reach the seventh or eighth bent of piles at the furthest, and could go no farther. It was and is, therefore, physically impossible that the machine could have been any such distance as the plaintiff contends from the creek, or any very great proportion of that distance.

Upon these considerations it seems that the newly-discovered evidence is not of that character which will entitle the verdict to be set aside, and it is alone upon such evidence that the case is considered applying thereto the principles of

law applicable to the motion for a new trial upon evidence alleged to be newly discovered.

If the materiality of this newly-discovered evidence is admitted, yet it must be such evidence as would, in all probability, have changed the result.   4 *Minor Inst.* 758; *Thompson's Case,* 8 *Gratt.* 637 ; *Read's Case,* 22 *Id.* 946 ; *St. John* v. *Alderson,* 32 *Id.* 140 ; *Wynne* v. *Newman,* 75 *Va.* 811 ; *Hobler* v. *Cole,* 49 *Cal.* 250; *Wallace* v. *Tumlin,* 42 *Ga.* 463. It must be such evidence to produce on another trial an opposite result on the merits.  16 *Am. & Eng. Encycl. L.* 564 and cases cited.

It is the conclusion reached that if this evidence had all been placed before the jury it could not have changed the result in this case, and upon a rule to show cause why a verdict should not be set aside on the ground of newly-discovered evidence, this question is one for the decision of the court before which the rule is heard, as clearly manifested by these authorities and by the reasoning of the matter.

The party seeking a new trial upon newly-discovered evidence must show that due diligence was exercised to procure it on the former trial.   It must be remembered that this is alleged newly-discovered evidence after a second trial.   The opinion of the Supreme Court indicated the defect of the evidence, and yet, apparently, without making any effort to inquire or discover whether any other evidence existed upon the question of the location of the machine, another trial was entered upon and concluded.   It is not enough that the evidence has been discovered since the former trial, but it must also appear that the evidence is such that, by the exercise of reasonable or due diligence on the part of the applicant, it could not have been procured for the first, and especially so as to the second trial after the need of it had been discovered ; and if the same facts could have been proven at either of such trials by other evidence than the newly discovered, a new trial will not be granted unless the party can satisfactorily explain why he did not attempt to use the evidence at his hand.   *Deacon* v. *Allen,* 1 *South.* 338 ; *Sheppard* v.

*Sheppard,* 5 *Halst.* 250; *Servis* v. *Cooper,* 4 *Vroom* 68; *Miller* v. *Ross,* 14 *Id.* 552; *Gardner* v. *Gardner,* 2 *Gray* 434; *Stuckslager* v. *McGee,* 40 *Iowa* 212; *Thomas* v. *Consolidated Traction Co.,* 33 *Vroom* 36. Proper diligence cannot be shown by any general statement that he inquired among such persons as would be likely to know, and that he did not learn what they knew until after the trial. *Pemberton* v. *Johnson,* 113 *Ind.* 538. The facts constituting the due diligence must be shown. A review of the evidence taken on the rule, and the character of it, reveals clearly that an ordinary amount of inquiry and diligence would have discovered this evidence if it existed. The place of accident and the character of it, of themselves, ought to have put the plaintiff upon the inquiry as to the distance of the machine from the creek and how many bents of piling were driven between the machine and the creek in which the piling was to which the pulley was attached, and the slightest observation and inquiry would have shown it. If this evidence ever had any existence due diligence was not used to procure it.

This evidence merely adds to the evidence on the two trials. The question of the location of this machine, and the number of bents of piling between it, where it stood, and the creek, was fully gone into on the trial, as it must have necessarily been produced. The distance was a fact material to the determination of the issue of whether a sufficient rope or ropes had been provided. The position of the machine was distinctly located. This evidence is of the same general character and entirely cumulative. It is additional evidence of the same general character. It merely corroborates one contention or the other assumed by the parties in this case. It merely adds to the evidence on this question of the location of the machine; it merely multiplies the witnesses to a fact before investigated, and only adds a few other circumstances of a general character, and it is a well-settled rule that a new trial will not be granted when the new evidence relied upon is merely cumulative of that introduced at the former trial. *Kirk* v. *Rickerson,* 17 *Vroom* 13;

*Tomlin* v. *Den,* 4 *Harr.* 76 ; *Den* v. *Geiger,* 4 *Halst.* 225 ; *Den* v. *Wintermute,* 1 *Gr.* 177 ; *Thomas* v. *Consolidated Traction Co., supra.*

These considerations are of such a character as constrains the court to declare that the plaintiff has no standing for a new trial upon this rule.

The rule to show cause must be discharged.