E. H. ROCKWELL, Appellant, v. B. F. KETCHUM, J. C. SCHEE, MARTIN HARNAGEL, P. K. WARE, ROBERT MERRICK, W. H. KNOTT, P. M. CAHILL, CLARK ROSS, J. W. MILLER and W. H. COULTER.

**Exclusion of evidence:** PREJUDICE. The striking of evidence from the record is not prejudicial error where it is subsequently reintroduced, and especially so where the same is treated in the instructions as before the jury for consideration.

**Evidence:** INSTRUCTION. Omission of the court to refer in its instructions to an item of evidence, although it might have properly done so, is not erroneous in the absence of a requested instruction referring to it.

**New trial:** NEWLY DISCOVERED EVIDENCE. Evidence which is merely cumulative in character will not require the granting of a new trial on the ground of newly discovered evidence.

**Same:** FAILURE TO FULLY EXAMINE WITNESS. Failure to examine a witness as to all matters essential to the trial is presumptively negligence and will not authorize a new trial on the ground of newly discovered evidence.

**Same.** A party to an action who had reason to think that a witness testifying to a state of facts knew more about the matter than he had disclosed to the party was put upon inquiry as to what the witness in fact knew; and a failure to elicit the additional evidence was a lack of diligence essential as the basis for a new trial on the ground of newly discovered evidence.

**Same:** NEWLY DISCOVERED EVIDENCE. A party is not entitled to a new
trial on the ground of newly discovered evidence consisting of
testimony that a witness on the trial gave before the grand jury,
where the party did not avail himself of the opportunity to secure
the evidence when the witness was upon the stand during the trial.

**Same.** The granting of a new trial on the ground of newly discovered
evidence is largely discretionary, and the denial of a new trial on
the ground of newly discovered evidence, which is merely cumu-
lative or which is not of a character likely to produce a different
result will not be disturbed on appeal.

*Appeal from Van Buren District Court.*—HON. C. W.
VERMILLION, Judge.

THURSDAY, DECEMBER 15, 1910.

ACTION for damages resulted in a judgment for de-
fendants. The plaintiff appeals.—*Affirmed.*

*Jaques & Jaques* and *Walker & McBeth*, for appel-
lant.

*Mitchell & Hunter, E. L. McCoid,* and *Robert Sloan,*
for appellees.

LADD, J.—Since September 30, 1886, the plaintiff
had published the Farmington Herald. Articles appeared
therein calculated to rouse the spirit of resentment on the
part of those criticised, and in the evening of January
17, 1908, between 6:45 and 6:55 oclock, as plaintiff started
home from the postoffice where he had been for his mail,
he was seized by four men, testified by him to be defend-
ants Merrick, Cahill, Harnagal, and Schee, who placed
him in an omnibus then driven up. They got into the
vehicle, and it was driven to the far side of the park,
some six blocks distant and stopped. Plaintiff, at the com-
mand of one of the parties, got out of the omnibus, and
as he stood by one of the wheels was ordered to remove his

coat and vest. Upon his refusal, these were taken from him as also was his shirt. According to his story, defendant Ware then applied tar upon his body, and defendant Ketchum handed out the feathers. The parties then left him with the omnibus and this action is for the recovery of damages because of the outrage. Each of the defendants specifically denied having had any part in this transaction and introduced evidence tending to show that he was elsewhere when the offense was committed. Many witnesses were called and the record is extensive, the abstract consisting of over four hundred pages. No question is made but that the offense was perpetrated in substantially the manner related by the plaintiff, and the main issue is whether the several defendants or any of them participated therein. Appellant challenges the verdict of the jury as being unsupported by the evidence. A careful examination of the entire record has convinced us that the point is not well taken. A review in detail is impracticable, and, if made, would serve no useful purpose. It is enough to say that on every issue the evidence is in sharp conflict, and, this being so, the verdict of the jury ought not to be disturbed.

Three causes of action were stated in the amended and substituted petition: (1) That defendants maliciously conspired together to cause, and in pursuance of so doing did cause, plaintiff to be arrested and indicted for the crime of libel; (2) that they maliciously conspired together to injure and in pursuance of so doing did injure plaintiff's business; and (3) that they maliciously conspired together to tar and feather plaintiff, and, in pursuance of so doing, did tar and feather him. After all the evidence had been introduced, plaintiff waived all claim to damages under the first of these, and thereupon defendants moved the court (1) to strike from the record all of the evidence with reference to malicious prosecution and a conspiracy; "all evidence of any kind or character with

reference to that, because it can not be considered with reference to anything else except the matters for which it was introduced and that was upon the question of malicious prosecution, and it would be immaterial, irrelevant, and incompetent as to the other issues in the case;" and (2) to direct a verdict for the defendants on the second of the above causes of action. This motion was sustained. Plaintiff then offered in evidence "all of the articles in the newspapers marked as exhibits, and by consent Exhibit 2 was to stay in the record." The court then said: "The plaintiff having dismissed his cause of action for alleged malicious prosecution, for damages claimed to have been caused thereby and for conspiracy to maliciously prosecute, on motion of the defendants, the court withdraws from the consideration of the jury all evidence offered upon and in defense of the claim for malicious prosecution, and for conspiracy to maliciously prosecute the plaintiff." To this the plaintiff excepted, and offered Exhibit 2 in evidence on the question of motive. No objection was interposed, and the court sustained objection to Exhibit 3 previously offered by defendants.

Exception was taken to these rulings, on the ground that it withdrew the newspaper articles from the consideration of the jury when they should have been considered as bearing on the last cause of action stated; that is, as tending to show a motive on the part of defendants for having dealt with plaintiff as charged in the third of the enumerated causes of action. It will be noted that the ruling on the motion in effect withdrew "all evidence with reference to the malicious prosecution," and had the record been left in this condition the point must have been sustained. But subsequently all of the newspaper articles were introduced in evidence. As plaintiff had previously waived his claim on the charge of malicious prosecution these could not have been offered as bearing on that cause of action, and

1. Exclusion of Evidence: prejudice.

the statement of the court withdrawing from the consideration of the jury all evidence offered on that claim did not have the effect of excluding the articles introduced in evidence after the elimination of that cause of action, and the jury could not well have so understood.

Moreover, these articles were treated in the instructions as before the jury for consideration, the court in the third instruction saying that "all evidence introduced only in support of, or in defense of said claim of malicious prosecution or conspiracy to maliciously prosecute him is withdrawn from your consideration," and in the eighteenth instruction reciting the introduction in evidence of articles published in plaintiff's paper, and cautioning the jury not to consider them as any evidence of the truthfulness of their contents, but as bearing on the motive defendants may have had for assaulting and mistreating plaintiff. It was only evidence bearing on the one cause of action which the third instruction withdrew; if introduced in support of one of the others such evidence continued in the record, and the eighteenth instruction treated the articles published by plaintiff as before the jury. The necessary conclusion, then, is that, even though the court, in ruling on defendants' motion to strike the evidence from the record, may have erred, this was without prejudice, because the newspaper articles were subsequently introduced and were before the jury for consideration.

A venomous article published in another newspaper of the same place was in evidence, and complaint is made because the eighteenth instruction did not refer to it also,

2. EVIDENCE: instruction. and caution against accepting its statements as true. One of the defendants was the publisher of the rival paper, and the only bearing of the article was in exhibiting his feeling toward plaintiff. Its introduction in evidence was for a different purpose than that of the articles published by plaintiff, and this probably accounts for no reference being made to it in the instruc-

tion.   Attention might well have been directed to it, and yet the court can not be expected to refer to every item of evidence and the omission to do so, in view of counsel not deeming the matter of sufficient importance to request an instruction, was not error.

One of the grounds of plaintiff's motion for new trial was that material evidence had been discovered since the return of the verdict.   This was presented in the form of affidavits, and we shall take these up in the order discussed by counsel for appellant. The plaintiff had gone to the postoffice shortly after 6:30 p. m., and in returning stopped to talk with Kreumeyer in front of the next store east, and then started for his office, but was seized at the corner of Elm and Second Streets near the bank of which defendant Ketchum was cashier.   The evidence adduced by the latter tended to show that he reached his home at about six o'clock, had lunch with his wife, and then went to the Telander Hotel about five blocks distant from the bank, where he remained until after seven o'clock, and then went down town with one Baker.   The newly discovered evidence was that of Norris Headding and Raymond Hassler, sixteen and seventeen years of age, respectively, who made affidavits that they met plaintiff coming to the postoffice, and, as they walked south, they saw Ketchum in front of them walking towards the bank, and, in crossing the street diagonally, they saw Merrick at the corner; that they got a drink at a pump further on, and then walked around to the corner a block north of the bank where they heard of the kidnapping of Rockwell.   Hassler modified his affidavit by saying that Ketchum was at the corner with Merrick instead of walking toward the bank.   The object of the testimony of these witnesses would be to bring Ketchum in the vicinity where plaintiff was seized, and thereby destroy the force of the evidence tending to establish an alibi, but the testimony of Hassler would be clearly

3. NEW TRIAL: newly discovered evidence.

cumulative of that given at the trial, for Otto Sherrich
had testified that, four or five minutes after the plaintiff
passed to the postoffice, he saw defendant Ware at the
corner one block north of the bank looking toward defend-
ant Ross' livery barn, from which the omnibus was ob-
tained and within five minutes saw defendant Ketchum and
Merrick at the corner diagonally across from the bank.
The testimony of Hassler, if adduced, then, would be
precisely like that of Sherrich.

The same objection obtains with reference to the testi-
mony of Headding.    True, he swore that he observed
Ketchum in the vicinity of the bank diagonally across
from where Sherrich testified at the trial he saw him.    As
said, the purpose of the evidence was to show that Ketchum
was so near the place where Rockwell was seized that he
might have participated in the transaction and the evidence
of both was to this point, although varying as to his exact
location at the corner.    The slight difference in placing
Ketchum does not obviate the conclusion that the evidence
is cumulative, merely "of the same kind to the same
point."    See *Wyatt v. Ry.*, 45 Iowa, 217; *Boggess v. Read*,
83 Iowa, 548; *Bullard v. Bullard*, 112 Iowa, 423; *Means
Bros. v. Yeager*, 96 Iowa, 694; *Hanousek v. City of
Marshalltown*, 130 Iowa, 550.

It was also shown as newly discovered evidence that
defendant Merrick testified before the grand jury that
when he came out of Crandall's poolroom he went to the
corner a block north of the bank, and on the way heard
that Rockwell had been taken away in the bus, and when
he reached there met G. M. Turney, and talked with him
ten or fifteen minutes.    In his testimony at the trial he
did not mention meeting Turney at that place, nor was
he asked with reference thereto.    Turney had testified to
being at the Telander Hotel until after seven o'clock and
seeing Ketchum there, so that it is argued that this testi-
mony tended to show that he was mistaken and was at the

corner mentioned. It thus appears that if Merrick would testify as related before the grand jury that he would contradict Turney, and it is argued by the appellant that it would be inconsistent with the evidence of alibi introduced by Merrick and Schee. If the time were assumed to be as appellant computes it this might be so. The record tends to show that Ketchum returned from a drive in the country after 5:30 p. m., having secured the vehicle at Ross' livery stable, had gone home, and from there to the Telander Hotel as previously recited, and, after remaining there for some time, had gone to town with Baker as said, and Turney may have followed down town shortly thereafter so that this portion of the argument might be explained by a slight discrepancy in time by witnesses.

Another affidavit was that Gena Bracy, a witness who had testified on the trial, which reads in part as follows:

On the night E. H. Rockwell was kidnapped, in January last, my husband came home to his supper a little before six o'clock. After he ate his supper he lay down on the bed as was his usual custom. I was intending to go down town to a show, and, when ready to start, my husband said to me, 'If you see anything going on, keep your mouth shut.' I said, 'What is going on down town?' He said, 'The boys are going to have some fun with Pop Rockwell.' Afterwards, when near the First National Bank corner, what he said came back to me with force. I was coming down Second Street, on the side next to the bank, and, when about twenty to twenty-five feet from the back of north end of the bank, four men suddenly appeared. I noticed them at or close to the door entering the back or directors' room of the bank from Second Street. I thought at the time that they came out of the bank building. I passed on down the street to the corner of the bank at Elm Street. I saw a man coming across Second Street, from the Carr corner, who I recognized as E. H. Rockwell. I also saw another coming across Elm Street from the Noske corner, who I thought at the time, and still think, was Robert Merrick. He was coming facing toward me. Just after Rockwell stepped up on the

sidewalk, the man who I took to be Merrick met the four who I thought came out of the bank just behind Rockwell. When I got to the corner, the crowd was putting Rockwell in the bus. I stopped and stood close to the door of the bank while they put him in the bus. I recognized two of the crowd whom I thought was Merrick and Schee, and one other whom I thought was Peter Cahill. I could not be so positive as to him, because he had a mask on, and I did not see his face fully. Merrick and Schee did not have masks on. Schee had on a cap and a long over-coat. I heard Rockwell hollow for help. When they got Rockwell in the bus it drove off up Elm Street at a fast gait. I then went immediately down Second Street to Jake Miller's store, as I testified before the court.

It is frankly conceded that her testimony would be cumulative.

Mabel Bennett had testified at the trial that she saw defendant Schee pass her and join those loading Rockwell in the bus, and ride on the step as it moved away. Riley had testified to having seen Merrick go to the scene of assault just as the bus was driving up. As to Cahill, her affidavit adds nothing. Moreover, the plaintiff had testified to what Mrs. Bracy now relates, and the circumstance that the newly discovered evidence is cumulative of that given by a party does not obviate the objection. *Fox v. Rey-nolds,* 24 Ind. 46; *Chicago, etc., Ry. Co. v. Calumet Stock Farm,* 194 Ill. 9 (61 N. E. 1095, 88 Am. St. Rep. 68); *Watts v. Moffet,* 12 Ind. App. 399 (40 N. E. 533); *Mitchell v. Stillings,* 20 Kan. 276; *Nininger v. Knox,* 8 Minn. 140 (Gil. 110).

Ordinarily a new trial will not be granted to enable a party to examine a witness on matter not referred to when on the witness stand, for presumptively the omis-sion to elicit from him all material testi-mony amounts to negligence. The presump-tion can only be overcome by a strong show-ing of diligence by the moving party. *Carson v. Cross,*

4. SAME: failure to fully ex-amine witness.

14 Iowa, 463; *Lindauer v. Hay,* 61 Iowa, 663; *Fanning v. McCraney.* Morris (Iowa), 398; *Marengo Savings Bank v. Kent,* 135 Iowa, 386.

Counsel for plaintiff admits that he suspected Mrs. Bracy knew more than she had informed him. Her reticence in talking with him and refusal to talk with plaintiff about the transaction justified this, and as a witness she testified: "I was in the locality of the bank when the bus drove around the corner and stopped at the bank corner." And yet she was not asked concerning what she then saw. The above testimony, in view of her conduct, put plaintiff on inquiry as to what she saw as the omnibus stopped at the bank corner and as she walked up street, and in not eliciting her testimony he was lacking in that diligence essential as the basis for new trial owing to later having ascertained what she claimed to have seen.

5. SAME.

An affidavit of John Story was that, in the evening previous to the kidnapping, defendant Miller entered the livery stable of Ross, and after talking a few minutes left, and that Ross immediately directed Story to hitch the team to the bus and tie it to the telephone pole. Even if this were newly discovered evidence, entitled to consideration, it, with all that was adduced, would not have made out a case against Miller. The affidavit of Mabel Junken was that, between 5:30 and 6 o'clock in the afternoon, she was in charge of the telephone exchange, and that the number at the bank called the livery stable of defendant Ross. The latter had testified at the trial that he received a telephone message requesting him to hitch a team to the omnibus and tie it outside, and that he had done so without knowing who had ordered it.

But he was not asked when he received the message, but his testimony before the grand jury was attached to the motion, and there he had said it was about 6 o'clock. No claim can be based on Ross' testimony before the

grand jury as plaintiff did not avail himself of the oppor-
tunity of procuring it when he was on the
witness stand.  Neither Ross nor Mabel Jun-
ken pretended to have identified the person
telephoning, and that the call came from the bank telephone
merely indicated that some one there was transmitting a
message, without implicating any one.  The circumstance
was collateral, and though the evidence could have been
admissible was not of much significance.  Certainly, it,
together with Merrick's admission before the grand jury,
ought not to be held necessarily sufficient to exact an order
for a new trial.  These were all the items of newly dis-
covered evidence touched in the argument.  It will be
noted that none are decisive of the merits, or render clear
any doubtful issue.  All defendants, to whose identity as
having assaulted him plaintiff testified, denied explicitly
having participated in the transaction.  Their testimony
was somewhat corroborated, as was that of plaintiff, and
if feeling was aroused by the articles published in plain-
tiff's newspaper, teeming with coarse ridicule and vitupera-
tion of defendants, this could not be obviated on another
trial any more than could that excited by the circumstance
of the inexcusable outrage on plaintiff's person, when weak
from sickness and under the physician's care,

*6. SAME: newly discovered evidence.*

Whether a new trial shall be granted on account of
newly discovered evidence is largely discretionary.  *Woer-
dehoff v. Muekel,* 131 Iowa, 300; *Trimble v. Tautlinger,*
104 Iowa, 665; *Clark v. Van Vleck,* 135
Iowa, 194.  It ought not to be granted un-
less the newly discovered evidence is such as likely will
lead to a different result.  *Harber v. Sexton,* 66 Iowa,
211; *Carpenter v. Brown,* 50 Iowa, 451.  And though this
court might hesitate about interfering, should the trial
court order a new trial on newly discovered evidence, even
though this were cumulative of a very persuasive charac-
ter, we ought not to regard an order denying a new trial

*7. SAME.*

as an abuse of discretion when the new evidence is cumulative, or in any case where a different result is not reasonably probable. *Renshaw v. Dignan,* 128 Iowa, 722; *Hemmer v. Berger,* 127 Iowa, 614; *Dunbauld v. Thompson,* 109 Iowa, 199. There is nothing in *White v. Nafus,* 84 Iowa, 350, and *Cleslie v. Frericks,* 95 Iowa, 83, to the contrary. In the former, the evidence of which that newly discovered was cumulative was brought out on cross examination, and, in the latter, the granting of a new trial because of misconduct of the prevailing party was approved.

Here the application was peculiarly addressed to the discretion of the trial court. The case was of a kind likely to arouse much interest and not a little feeling. A large number of witnesses testified. The evidence was in sharp conflict. Inevitably, considerable is overlooked in such trials or comes to the surface after these are over, and the determination of the influence of that which was not adduced when presented to the court as a ground for a new trial likely would have exerted on the result or would upon another trial is peculiarly within the province of the trial court, and, upon a thorough examinaiton of the voluminous record before us, we can not say that in denying the application for new trial there was any abuse of discretion. The exception to misconduct of counsel is without any support in the record.—*Affirmed.*