**GALVESTON, H. & S. A. RY. CO. v.
WALDO.
No. 9973.**

Court of Civil Appeals of Texas. Galveston.
June 1, 1934.

Rehearing Denied Nov. 8, 1934.

Baker, Botts, Andrews & Wharton, John P. Bullington, and Tom Martin Davis, all of Houston, for appellant.

Fulbright, Crooker & Freeman, of Houston (W. B. Bates, of Houston, of counsel), for appellee.

GRAVES, Justice.

This cause as now at bar is a repercussion of its former appearance, the denouements in which are fully reported under the same names and style in 119 Tex. 377, 29 S.W.(2d) 323, (Tex. Civ. App.) 35 S.W.(2d) 447, and (Tex. Com. App.) 50 S.W.(2d) 274, respectively; hence need not be repeated here.

This time in the trial court it was, in our opinion, submitted to a jury's arbitrament upon special issues appropriately embodying the essential fact basis for the application of the law of the case, as laid down by the Supreme Court in 50 S.W.(2d) 274, supra.

The jury has now answered those inquiries, and its verdict, being neither without any evidence to support it nor so against the weight of what was heard as to be clearly wrong, cannot be disturbed on this appeal for any lack of sufficiency in proof.

These conclusions, in their reaches, require the overruling of all appellant's assigned criticisms of the proceedings had upon the trial before the jury, especially those to the effect that the term "practice," as used in the court's charge, should have been defined to the jury, that "unavoidable accident," likewise appearing, was erroneously defined, and that none of the inquiries propounded followed the law as so declared by the Supreme Court.

The submitted issues and the jury's verdict thereon were these:

"No. 1. Do you find from a preponderance of the evidence that it was a practice on and just prior to September 17, 1926, for various employees of the defendant working in the same room with the plaintiff to propel paper clips, pins or other articles through the air in the direction of other employees?"

Answer: "We do."

"No. 2. If you have answered Special Issue No. 1 'We do' and only in that event, then answer:

"Do you find from a preponderance of the evidence that E. R. Doss had become acquainted prior to September 17, 1926, with the fact that such employees were indulging in such practice in so propelling paper clips, pins, or other articles through the air?"

Answer: "We do."

"No. 3. If you have answered Special Issue No. 2, 'We do,' and only in that event, then answer:

"Do you find from a preponderance of the evidence that the failure of the defendant to issue specific instructions for bidding such practice of propelling paper clips, pins or other objects through the air in the office where plaintiff was working prior to and on September 17, 1926, was negligence as that term has been herein defined to you?"

Answer: "We do."

"No. 4. If you have answered Special Issue No. 3 'We do' then and then only in that event answer:

"Do you find from a preponderance of the evidence that the failure of the defendant to issue specific instructions against the practice of propelling paper clips, pins or other objects through the air in the office where plaintiff was working prior to and on September 17, 1926, was a proximate cause as that term has been herein defined to you of the plaintiff's injuries, if any he sustained?"

Answer: "We do."

"No. 5. If you have answered Special Issue No. 1 'We do,' and Special Issue No. 2

'We do not,' and only in that event, then answer:

"Do you find from a preponderance of the evidence that E. R. Doss, Chief Clerk of the Freight Accounting Department of defendant, failed to exercise ordinary care to acquaint himself with the practice that employees of the defendant were propelling paper clips, pins or other articles through the air in the office where plaintiff was working just prior to and on September 17, 1926?

"Answer 'We do' or 'We do not' as you find the fact to be."

To which special issue the jury made no answer.

"No. 6. If you have answered Special Issue No. 5 'We do' and only in that event, then answer:

"Do you find from a preponderance of the evidence that such failure as is inquired about in Special Issue No. 5 on the part of E. R. Doss, was negligence, as that term has been herein defined to you?

"Answer 'We do' or 'We do not' as you find the fact to be."

To which special issue the jury made no answer.

"No. 7. If you have answered Special Issue No. 6 'We do' and only in that event, then answer:

"Do you find from a preponderance of the evidence that such negligence as is inquired about in Special Issue No. 6 was a proximate cause, as that term has been herein defined to you, of plaintiff's injuries?

"Answer 'We do' or 'We do not' as you find the fact to be."

To which special issue the jury made no answer.

"No. 8. Do you find that plaintiff's injuries, if any, were not the result of an unavoidable accident?

"Answer 'We do' or 'We do not' as you find the fact to be.

"In connection with the foregoing issue you are instructed that an unavoidable accident is an event happening without fault or negligence upon the part of any one which proximately caused the injuries complained of."

To which special issue the jury answered: "We do."

"No. 9. What sum of money, if any, if paid in cash now will fairly and reasonably compensate the plaintiff Willis W. Waldo for the injuries, if any, proximately caused by the negligence of the defendant, if any, on the occasion in question, taking into consideration exclusively the following elements of damage:

"(a) Physical pain and suffering by him, if any, from September 17, 1926, down to the date of this trial.

"(b) Mental anguish suffered by him, if any, from September 17, 1926, down to the date of this trial.

"(c) The reasonable value of his diminished capacity, if any, to perform labor and services from October 31, 1927, down to the date of this trial.

"(d) The reasonable value, if any, if paid in money now, of his diminished capacity to perform labor and services in the future beyond this trial.

"Answer stating the amount in dollars and cents, if any you find."

To which special issue the jury answered: "$15,000.00 (Fifteen Thousand Dollars)."

To have essayed a didactic expounding to men of at least average intelligence of the meaning of the word "practice," as thus so naturally appearing in these five simply stated inquiries about an incident in itself as a-b-c like as children's play, would have been like undertaking to demonstrate the obvious, hence a perversion of, rather than a compliance with, R. S. art. 2189, which only requires the explanation of "legal terms"—that is, those having in law of themselves or when applied to judicial proceedings a significance either foreign to the language of ordinary life, or different from that usually given the same words when in such general use, as certainly was the one practice in this instance. Texas & P. Ry. Co. v. Short (Tex. Civ. App.) 62 S.W.(2d) at page 998, writ of error refused.

Moreover, the contention for such a definition here carries its own refutation, in that the Supreme Court itself, in defining the duty of the appellant to the appellee as its employee, under the facts in this controversy, uses the term as being synonymous with custom or habit. See Waldo v. Galveston, H. & S. A. Railway Co., 50 S.W.(2d) at page 276 (1, 2).

As concerns the given instruction, on the other hand, that "an unavoidable accident is an event happening without fault or negligence on the part of any one which proximately caused the injuries complained of," it may be conceded that, instead of "any one," there should have been "either the injured party or the defendant"; but, in the light of the record otherwise, such really unimportant departure from proper form cannot reason-

ably be said to have prejudicially affected appellant's rights. Aside from there being no such pleading, there was further no evidence, nor circumstance from which that might have been a reasonable inference, that any other person than employees of appellant was in the room when appellee was injured, nor that such an outsider had ever engaged in throwing paper clips on its premises; wherefore there was no support whatever for the indulgence of a mere surmise that some such third person may have come into the office among these employees and himself shot the clip that struck the appellee.

The several specifications against the first four of the quoted issues as not being in conformity to the law of this case itself, as already declared by the Supreme Court, would seem more nearly contumacious toward that tribunal than the lodging of a true bill against the trial court; the sum and substance of them being:

(1) Under No. 1, the jury could find there was a practice of shooting paper clips, even if it believed these were shot only on two days either widely separated in time or immediately following each other.

(2) The form of No. 2 would permit an affirmative answer thereto, even though the jury believed Doss had acquired knowledge of the claimed "practice" on the day (or even a few hours) before the injury, instead of limiting any finding as to when he became so acquainted to a time within which the appellant, by the exercise of due care, reasonably could have, in advance, taken proper steps to stop the shooting.

(3) Appellant's remissness, if any, lay in neglecting to properly enforce its long-standing pre-existing rules against shooting paper clips (all its employees, inclusive of the appellee, having all along both known of and so understood them), not in merely failing to make such a further statement thereof as issue No. 3 called for, which therefore in law could neither have constituted actionable negligence on its part toward the appellee, nor a proximate cause of his injuries.

(4) Issues Nos. 3 and 4 were on the weight of the evidence, in that they unwarrantedly assumed the appellant, in advance of the injury, both knew of and could effectively have stopped the alleged "practice" in time by the issuance of the special instructions called for.

■ There appears neither pleading nor evidence to support the assumption that issue No. 1 might have been answered affirmatively, although the jury believed that clips had been shot only on two such days. Only two theories of the cause were so presented; that of appellee being that, long prior to the date of his injury, the employees had customarily and habitually shot clips, while appellant in turn denied that any such conduct had occurred. It may not be assumed, therefore, that the jury would go so far afield from the specific case as thus upon each side supported by both pleadings and proof.

■ A complete answer to the complaint against issue No. 2 is that it does not require any finding as to appellant's duty with reference to preventing the declared upon "practice," but merely seeks to bring out whether or not appellant, through its representative, Mr. Doss, prior to the date of the appellee's injury, knew of the custom and habit of its employees in shooting the paper clips that had already been found to have existed by the jury's answer to the preceding question. It seems inept to yet say, despite the Supreme Court's declaration to the contrary upon the substance of the same evidence upon the former trial, that no negligence was properly predicable upon the appellant's failure to issue specific instructions forbidding the paper clip shooting habit, custom, or "practice," because its pre-existing general rules against such conduct had remained extant, since the limitation this time of the fact situation to what the Supreme Court before held fixed liability upon the appellant company was even more specific and compelling than it was then. It would seem a work of supererogation to again even make a résumé of the facts so showing, because, with careful discrimination, the able trial judge, following the pleadings and proof that reflected only the two opposing theories already referred to, properly restricted the ultimate fact issues to the four inquiries propounded to the jury. That the verdict thereon did fix the liability against the railway company under the principles so pronounced by the Supreme Court seems not to be debatable.

Indeed, appellant's own witnesses admitted that, notwithstanding the existence of the general rule referred to, the usual procedure for stopping any specific misconduct upon the part of its employees was to issue instructions against it.

■ Further presentments to the effect that special issue No. 9 was a comment upon the weight of the evidence, in that it assumed the appellee's injuries were of such a nature that no amount of money would be sufficient to compensate him therefor, and that the jury's verdict of $15,000 as damages for the injuries suffered was excessive, cannot

be sustained. The language of this charge is just as susceptible in print to the construction that in using it the learned trial judge thought the plaintiff had suffered no injuries at all, as it is to the slant taken upon it in appellant's complaint. At any rate, whatever slight shades of difference in meaning might be given it by varying inflections of the voice in reading it, there is no such error apparent therein as was reasonably calculated to cause, or as probably did cause, the rendition of an improper judgment.

■ The $15,000 amount found in answering this inquiry by the jury, under the evidence, does not shock the conscience of this appellate tribunal; it being sufficient to support these, among other findings not already specifically stated: The appellee, 31 years old at the time of his injury, had been forced to quit appellant's service on account of it, having then a life expectancy of 35.3 years; he had been earning $115 per month, with a reasonable prospect of being advanced to $150 per month; he had sustained the complete loss of sight in his right eye, with some diminution already in that of the left one, and a danger of its further impairment in the future. It is deemed unnecessary to cite instances of the upholding of equally as considerable verdicts—relatively to the conditions, upon evidence no more meritorious than that here existing, since there are many extant both in this state and other jurisdictions.

So much for the case as made before and determined by the jury on the pleadings and evidence there presented. Appellant, however, as primal here to the attacks on those proceedings disposed of supra, earnestly and ably urges it was entitled to another trial, because of its discovery, after the judgment below had been so entered against it, of evidence which it alleges in its proposition belied the appellee's testimony herein to having been able-bodied prior to this injury, and was further to this effect: "That plaintiff—in another cause filed in the Federal Court—had made oath to total permanent disability from other causes and for a long period before the filing of this State-court suit; that he reiterated such claimed disability in a deposition in the Federal Court after verdict in this State-case, at such time reading small type with apparent ease, contrary to the claim made in this State-court that he absolutely could not do so."

As understood by this court, contrary to the impression stated in appellant's brief, the transcript expressly reflects that the trial court neither refused a new trial upon this belatedly adduced testimony solely because of any conclusion that it would probably not produce a different result upon another trial, nor made any findings on what were alleged as facts in the motion declaring upon it other than merely such as are implied by law from the overruling thereof; that is, while appellant's bill recites that it entertained such an opinion, the court itself refused to approve the statement by this affirmative qualification the other way: "The above and foregoing bill of exception No. 2 having been submitted to adverse counsel in the manner and for the time required by law and having been by me found to be true and correct, it is hereby allowed, approved, and ordered filed, with the qualifications that the court makes no finding with reference to the facts set forth in the summary of the grounds for motion of new trial contained in this bill."

The "summary of the grounds for motion of new trial," thus referred to, not only included the material substance of all the "newly discovered evidence" appellant so relied upon, but that of the diligence declared to have been used to procure it before the jury trial as well.

■ So that, the trial court on this new trial hearing having had the same latitude as a jury has on an original trial, and there being no express finding by it to the contrary on either feature, the presumption on appeal is, not only that it refused the motion on any ground the record justifies, but also that it found all the relevant fact issues, including that touching the exercise of due diligence, against appellant, if there be sufficient support in the evidence therefor. St. Louis, B. & M. Ry. Co. v. Cole (Tex. Com. App.) 14 S.W. (2d) 1024, and Id. (Tex. Com. App.) 16 S.W. (2d) 534, with cited authorities.

■ In the first place, this court, on going into the testimony heard, cannot say it was insufficient to support a finding that appellant failed to exercise such proper diligence. This newly discovered evidence was declared upon by appellant as a ground for setting aside the judgment now appealed from for the first time on December 15, 1932, two months after the second trial of the cause below; the injury having occurred September 17, 1926, the original filing of the suit following in 1928, with the first trial probably having been had about 1930, the exact date not here appearing. Thus for more than six years after this publicly happening injury in its own office in daytime with some 250 or more of its employees present, and more than four years after his petition against it in

court had notified it that appellee was claiming his earning capacity to have been through its negligence thereby greatly diminished, appellant, although all the while denying that any such injury had even been suffered by him, not only failed to find any symptom of evidence aliunde that his so-asserted incapacity, if any, had resulted from injuries or diseases otherwise caused, but went through two jury trials without ever so charging; this, in the face of these among other facts: That his written application for employment before entering its service in May, 1925, had been in its files all that time, which gave a full general history of his former employments, including his service in the United States Army from June, 1917, to April, 1919, both in San Antonio, Tex., and in France, his attendance at specified schools in Texas from August 5, 1919, to November, 1921, and his work for his father as manager of a grocery and meat market at Pilot Point, Tex., from February, 1922, to April, 1925, when he thus sought service with appellant; that the railway company's own physician then examined and pronounced him as being in good physical condition, inclusive of having normal, or "20-20," eyesight, after which he entered its employ and admittedly served it acceptably, without a complaint on its part, in a capacity that required the constant use of good eye sight until after this injury; that no testimony whatever was given by nor asked by either party of the appellee, or any other witness, upon either trial of this cause, as to his general state of health or physical condition, either then or at any prior time, the evidence being wholly confined to the claimed injury to his eyesight, upon which alone he had sought recovery; that appellant's claim agent in charge of investigating the facts of this case for it continuously from the date of the injury in September, 1926, to December 15, 1932, when he swore to the motion for new trial therein, but did not testify as a witness, discloses that he only made inquiries of Galveston, Harrisburg & San Antonio Railway employees, along with those of affiliated railway lines, various doctors whom he knew to have examined or treated appellee, and others he "thought" might know pertinent facts about him, touching "Mr. Waldo's activities since he had left the employment of the G. H. & S. A. Ry. Co." This obviously was not reasonably calculated to bring out what his physical condition had been when he came out of the United States Army service some seven years before that, failing as it completely did throughout all those years to follow up any of the leads he had so given appellant in his application for employment, where, as undisputedly appears, it could have then found out everything material it thus, ex post facto both trials on the merits, now adduces for the first time. In sum, without further details, it affirmatively appears that appellant wholly failed to seasonably explore at least two sources from which the declared upon newly discovered evidence could have been found long prior to either trial: (1) Through an investigation of the appellee's United States Army record; (2) by cross-examining him on one or both of the jury trials as to his physical condition in other respects than eyesight only.

 Wherefore, on so inconclusive a showing as it did make, with the probative force of the circumstances adverted to tending adversely, a finding that it was insufficient, under our authorities, would not only have been authorized, but on the appeal will be presumed to have been made, if necessary to support the judgment rendered. Hatchett v. Conner, 30 Tex. 104; Scott v. Bank, 97 Tex. 31, 75 S. W. 7, 104 Am. St. Rep. 835; Hoban v. Sandford & Stillman Co., 64 N. J. Law, 426, 45 A. 819; 46 C. J. § 231, p. 259; Paschen v. Alexander (Tex. Civ. App.) 41 S.W.(2d) 86; Walker v. Graham, 17 Tex. 262; Duckworth v. Ry. Co., 33 Tex. Civ. App. 66, 75 S. W. 913; Neal v. Whitlock, 45 Tex. Civ. App. 457, 101 S. W. 284; Houston & T. C. R. Co. v. Davenport, 102 Tex. 369, 117 S. W. 791; Moore v. Lehmann (Tex. Civ. App.) 165 S. W. 83; Moores v. Wills, 69 Tex. 109, 5 S. W. 675, 677; De Leon v. Longoria (Tex. Civ. App.) 4 S.W.(2d) 222; Missouri, K. & T. Ry. Co. v. Rack, 21 Tex. Civ. App. 667, 52 S. W. 988 (writ refused); Benge's Adm'r v. Marcum, 194 Ky. 121, 238 S. W. 174; 20 R. C. L. 293; Rockwell v. Ketchum, 149 Iowa, 507, 128 N. W. 940.

 In the next place, whether or not the trial court denied a new trial solely on such a conclusion, this court thinks it not reasonably probable the alleged newly discovered evidence would, in the circumstances otherwise appearing, have brought about a different result on another trial, for these, among other, reasons:

(1) Appellant fails to show the appellee to have been, as asserted, totally and permanently disabled from ailments and disease contracted while in the United States Army during the World War; hence had become so long prior to receiving the injury to his eyes herein sued upon, whatever he claimed to the contrary in his suit in the federal court to collect war risk insurance against such physi-

cal troubles, they being wholly disconnected with the specific eye injury here involved, his oath and deposition in which cause it now so invokes against him. In other words, appellant's own medical witness, by whom it undertook to establish that appellee had suffered such disablement as he swore he had in the federal proceedings prior to this injury to his eye, testified on this new trial hearing that, after observations and examinations of him during the preceding two or three years, there was then nothing organically wrong with his physical condition other than his eyes, which he did not consider, not being an oculist; that he was then able to work, "providing there is nothing wrong with his eye; I don't know anything about that." Mr. Doss, appellee's boss, while in appellant's service, also testified on this hearing, and, after disclaiming ever having known anything about appellant's asserted disabilities while he was with the railroad, further said that he had been examined and O. K.'d by the company's physician as being in sound physical condition on coming there, had always thereafter appeared so to be, satisfactorily performed all his duties during his entire service as an employee from June, 1925, to October, 1927, and that he (Doss) had never seen anything to indicate that appellee was suffering from any physical ailments prior to this injury to his eye.

None of this testimony even tends to indicate that appellee did not receive the injury to his eye the unattacked verdict of the jury herein awarded him damages for. Its tendency at most is to establish that his claim in the federal court to having been totally and permanently disabled by his prior army service, at any rate as concerned his physical condition during the entire period of his railroad service for appellant prior to his eye injury, was unreal and unfounded, he being in fact throughout that time free of any such disability; wherefore its only office would have been to impeach or discredit him, hence it did not justify a new trial. St. Louis S. W. Ry. Co. v. Turner (Tex. Civ. App.) 225 S. W. 383 (writ refused); Houston City St. Ry. Co. v. Sciacca, 80 Tex. 350, 16 S. W. 31; Conwill v. Railway Co., 85 Tex. 96, 19 S. W. 1017; Houston & T. C. R. Co. v. Davenport, 102 Tex. 369, 117 S. W. 790; Houston Lighting & Power Co. v. Hooper, 46 Tex. Civ. App. 257, 102 S. W. 133; Al Parker Securities Co. v. Lyons (Tex. Civ. App.) 28 S.W.(2d) 950; Qualls v. Fowler (Tex. Civ. App.) 186 S. W. 256.

▋ (2) So much of the proffered evidence as may have tended to indicate the appellee's ability "to read small type with apparent ease after verdict in this State-case," even if contradictory of some of his testimony before the jury on this trial, which does not seem to this court to be a correct appraisal, was still clearly merely cumulative of other testimony given there by both himself in different connections and by Dr. Pulliam, the eye specialist, that he still retained the power to read small type; he himself adding that he seldom risked doing so, or reading at all, in the effort "to hold my sight down where I won't impair it," and because of Dr. Kirkpatrick's advice to him not to read. This, therefore, whether actually contradictory or not, is plainly not alone merely cumulative of other evidence heard upon the trial, but further could only have affected the amount of the recovery. Consequently it neither augured a different result in the event of, nor constituted, under our authorities, a proper basis for another trial. Ham v. Taylor, 22 Tex. 225; Traylor v. Townsend, 61 Tex. 144; Gulf, C. & S. F. Ry. Co. v. Brown, 16 Tex. Civ. App. 93, 40 S. W. 608; Missouri, K. & T. R. Co. v. Gist, 31 Tex. Civ. App. 662, 73 S. W. 857; Cox v. Windham (Tex. Civ. App.) 10 S. W.(2d) 136; De Leon v. Longoria (Tex. Civ. App.) 4 S.W.(2d) 222; Mueller v. Hewgley (Tex. Civ. App.) 46 S.W.(2d) 426; Martin v. De la Garza (Tex. Civ. App.) 38 S.W.(2d) 157; Logan v. Hunt (Tex. Civ. App.) 41 S.W.(2d) 1041; Texas Inter. Ry. v. Hughes (Tex. Civ. App.) 34 S.W.(2d) 1103; Wolf v. Mahan, 57 Tex. 171; Griffith's Heirs v. Eliot, 60 Tex. 334; Houston & T. C. Ry. Co. v. Devainy, 63 Tex. 172; Sabine & E. T. Ry. Co. v. Wood, 69 Tex. 682, 7 S. W. 372; Galveston Oil Co. v. Thompson, 76 Tex. 235, 13 S. W. 60; Texas & N. O. R. Co. v. Scarborough, 101 Tex. 436, 108 S. W. 804.

▋ Finally and more fundamentally, whether or not the appellee so made an exaggerated, or even wholly false, claim for general physical disabilities under a war risk insurance policy issued to him years before by the United States government was in any event a wholly extraneous matter as concerned the sole issue made and determined in this controversy, a specific injury to his eyesight only, inflicted through particularized and amply proven negligence of his employer while in its service, hence neither did nor could have had any causal relation to his service in its behalf or to the injuries he received at its hands. In such circumstances the principle, at least, of this recent holding in Dawson v. Texas & P. Railway Co. (Tex. Sup.) 70 S.W.(2d) 392, by our Supreme Court

in a somewhat analogous situation, is not deemed inapplicable: "Switchman's false statements in application for employment that he had not been injured and had not sued railroad for damages, and his failure to disclose former employment did not preclude recovery for injuries where he was physically fit to perform duties and misrepresentations had no causal relation to fitness for employment or injuries."

Pursuant to these conclusions, the trial court's judgment has been affirmed.

Affirmed.