## JOHN M. NEAL ET AL. v. W. W. WHITLOCK.

Decided March 9, 1907. ·

### 1.—Conflicting Evidence—Verdict.

In a suit to enjoin the sale of a promissory note on the ground that the same was subject to a credit which was not endorsed, evidence considered, and held sufficient to support the verdict of the jury in plaintiff's favor.

### 2.—Amount of Note—Fraud—Injunction.

When the facts are such that the maker of a note, if sued upon the same, could defend on the ground that the face of the note called for a larger amount than the maker owed, or that the note was entitled to a credit, the same facts would warrant affirmative relief by injunction to prevent the sale of the note by the holder.

### 3.—New Trial—Newly Discovered Evidence—Insufficiency.

A motion for new trial on the ground of newly discovered evidence is properly overruled when the newly discovered evidence consists of the testimony of witnesses who testified on the trial, and there is nothing to show that the testimony could not have been elicited at that time.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower. ·

*Hugh Jackson* and *A. D. Lipscomb,* for appellants.—Where witnesses of the prevailing party have misstated a material fact (within the exclusive knowledge of the adverse party and such witnesses), their ·affidavits on motion for new trial, showing the mistake in their

testimony, furnishes good ground for new trial, there being no failure to cross examine upon the point. King v. Gray, 17 Texas, 72.

Rights evidenced by written instruments will not be impaired or altered in an action for correction, unless the proof authorizing such relief is clear and satisfactory. Monks v. McGrady, 71 Texas, 14, and cases cited; Pomeroy's Equity Jurisprudence, sec. 859.

There is no equity jurisdiction for correction of instruments for matter subsisting and known to the parties at the time of their execution, unless good excuse is alleged for failure of the parties to make the instruments correct at the time of their execution, such as fraud, duress, or the like. Pomeroy's Equity Jurisprudence, sec. 839.

Where one entrusted with funds of another has become employed to obtain a loan by a third person, to whom he loans such funds, or part thereof, under the employment, the owner of such funds can not be held bound in an action between him and the borrower, by acts and declarations of, or notice to, such employe of the borrower. Centennial, etc., v. Parham, 80 Texas, 518; People's Asso. v. Dailey, 17 Texas Civ. App., 42.

*Marshall & Marshall* and *A. W. Marshall,* for appellees.—Where the petition alleges a contemporaneous agreement at the time of the execution of the instrument, whereby one party agrees to have certain stipulations engrafted on said instrument, and acting upon such promise and agreement, the other party executes the instrument with full reliance that such is a part of the instrument, there can be no negligence on his part, and a petition setting forth such facts is sufficient to show a cause of action. Canales v. Perez, 65 Texas, 293; Davis v. Davis, 70 Texas, 125.

GILL, CHIEF JUSTICE.—This suit was brought by W. W. Whitlock to enjoin John M. and Anna Neal from selling a vendor's lien note of $2,000 held by them against him, on the ground that he was entitled to a credit thereon of $500 which the note did not show. The preliminary injunction was granted. The note being due at the date of the trial plaintiff tendered into the registry of the court $1,650, the amount due on the note less the credit claimed. Defendants demurred generally, and pleading to the merits they interposed a general denial and plea of estoppel. A trial by jury resulted in a verdict for plaintiff on the issues made and the court thereupon so adjudged, awarding to defendants the sum tendered. Neal and his wife have appealed.

The following is a brief history of the transaction as disclosed by the record: W. W. Whitlock secured a twenty-day option to purchase from Mrs. Conway a hotel in Liberty, Texas. He paid her $500 in cash. During the time allowed him to raise the balance of the purchase price, viz. $1,500, he applied to John Knight at Batson for a loan of that amount offering as security a lien on the property. He also applied to H. E. Marshall and Hugh Jackson for the loan of a like sum upon like terms and for one reason or another each refused to make the loan. He also applied to Maj. J. N. Dark to secure for him a like sum from Neal, but Dark told him that Neal had not the ready money and wrote a letter for him to Knight recommending the loan.

This failed. Whitlock then went to Neal, stated his situation and asked for a loan. Neal told him to go to Maj. Dark and if Dark had sufficient money belonging to Neal to make the loan. Dark found that Neal had not that much ready money to his credit, the most of his cash being on time deposit in a Houston bank, so he again declined to make the loan. Whitlock then went to Lovett and Harrison, a firm of attorneys at Liberty, and stated his situation to them. Mr. Lovett of that firm told him the money could be procured from Neal through Dark but that it would take a "bait" of $150 to get it. After some protest Whitlock agreed to pay the fee rather than suffer heavy loss, so Lovett arranged the matter with Dark. Lovett went personally to Neal—taking a letter from Dark—and brought back Neal's check for $1,800 payable to Dark.

When the time came to consummate the transaction Neal refused to purchase a note given to Mrs. Conway for the purchase price, but required that Mrs. Conway deed the property direct to him and he and his wife deeded it to Whitlock. The deed from Mrs. Conway to the Neals recited a cash consideration of $2,000, although Dark only turned over to her the balance due on Whitlock's purchase, viz., $1,500, Dark and his principals, the Neals, being aware that Whitlock had himself paid $500.

The Neals then deeded the property to Whitlock for a recited deferred consideration of $2,000. He also executed a vendor's lien note for $2,000, accepted the deed and went into possession of the property. He also executed a mortgage in a like sum covering the property and sixty head of cattle belonging to him. This was also to secure the vendor's lien note. According to the testimony of Whitlock he protested against the sum for which the papers were drawn and called attention to the fact that he had already paid $500 and that Dark promised either to pay him or deposit to his credit the additional sum, or else endorse the credit on the note. As to this protest on his part and a subsequent demand on Maj. Dark to make the credit and the promise of Dark to do it, he is strongly corroborated by apparently disinterested witnesses. Dark died a few days after the transaction was closed and the credit was never made. Whether the money was actually paid to or for Whitlock is the issue.

Neal did not personally participate in those dealings further than to stipulate the security to be furnished, the form the transaction should take and to write two checks, one for $1,800 and another for $200, each payable to Dark who was in our opinion clearly shown to have been Neal's authorized agent in the premises. Neal could neither read nor write and signed the checks and deeds with his mark. Dark was his trusted friend and generally managed his loans for him. Neal lived 16 miles from Liberty and was not present during any part of the transaction. The two checks were not drawn at the same time, and the first corresponds in amount neither with the theory of plaintiff nor defendants.

On the other hand, Neal testified that he loaned $2,000 and that Whitlock admitted the fact to him. This statement of Neal as to Whitlock's admission is corroborated by another witness. It is also true that in order to furnish as part of the security the sixty head of

cattle it was necessary to discharge a mortgage on them for $205 held by Lovett & Harrison. There was $74 for insurance and $150 paid to that firm to procure the loan which was divided between them and Dark. All this Whitlock claimed to have paid out of money he claimed to have had on hand and was keeping to run the hotel with and for other incidental uses. He afterwards borrowed of Mrs. Conway $100 for a like purpose.

The $1,800 check was cashed by Maj. Dark. The $200 check was shown to have been cashed by Lovett & Harrison and bore their endorsement together with Dark's. Whitlock's name did not appear thereon.

Both members of the law firm testified that according to their best recollection Whitlock discharged the cattle mortgage in cash. Mrs. Dark testified that when her husband came home the last time before his death he had even $75 in his pocket, but if other testimony is true that he went to Liberty at least twice after the transaction was closed this fact loses much of its significance.

The above by no means includes all the facts which bear one way or another on the main issue but are sufficient to indicate the nature of the controversy and suggest in a general way the points upon which the case must turn.

The appellant assails the judgment upon the ground, first, that it is against the manifest truth of the case, and, as subsidiary to this, the proposition is advanced that because the plaintiff has assailed a transaction evidenced by written instruments, and as the evidence upon which he rests his right to recover is not clear and convincing and is not free from the suspicion of fraud, a court of equity ought not to allow his claim. We have carefully considered all the evidence bearing upon the issue and while it is true the defense made a strong showing we are convinced that as the record stands we would not be justified in disturbing the finding of the jury upon the facts.

Under the fourth assignment the defendant complains of the ruling of the trial court in refusing to sustain the special exception to the plaintiff's petition. The objection urged to the pleading was that it failed to exclude the idea that the form of the written instruments sought to be corrected was not due to the negligence of the plaintiff in failing to refuse to sign them unless corrected at the time. The principle invoked is not applicable to facts of this case. Had the Neals sued to recover the face of the note it is clear Whitlock could have properly claimed the credit, and his position is not changed by the fact that he affirmatively asks the relief.

The contention is also made that the judgment should have been set aside and a new trial granted on the ground of newly discovered evidence. This consisted of the affidavits of Lovett & Harrison that on maturer thought they were neither sure that Whitlock paid the cattle mortgage of $205 in cash. Both these witnesses testified on the main trial and cross-examination disclosed that Lovett then had some doubts on account of the fact that the $200 check had passed through his hands at that time. The affidavit of Harrison was that when the chattel mortgage was discharged he was in the buggy and Whitlock and Lovett were standing on the ground and that he was in no posi-

tion to see with certainty whether the entire sum was paid in cash or not. The opportunity of the witnesses to know the facts to which he testified could have easily been disclosed on cross-examination, and the failure to do this under the circumstances of this case, the witness not having affirmatively misled counsel on the point, justifies a refusal on our part to disturb the result of the trial on so slight a ground. To allow such a course would in many instances indefinitely postpone the termination of causes.

The complaint against the charge is without merit. The jury could not have found as they did under the charge without passing upon the controlling fact inquiry. The judgment is affirmed.

*Affirmed.*

Writ of error refused.