## MOORE v. LEHMANN.

(Court of Civil Appeals of Texas. San Antonio. March 18, 1914.)

1. BOUNDARIES (§ 46*) — ESTABLISHMENT — AGREEMENTS BETWEEN THE PARTIES.

Where the line in controversy was that of five surveys out of a group consisting of a number of surveys, all constituting one tier, calling for each other, and all surveyed by the same surveyor, an agreement as to the line of one of the surveys, separated from the nearest survey in controversy by three other surveys, is not binding as to the lines in controversy.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 212–226, 249–251; Dec. Dig. § 46.*]

2. TRIAL (§ 237*)—REQUESTED CHARGES—FURTHER INSTRUCTIONS—BURDEN OF PROOF.

Where the court had charged that the burden was upon the plaintiff to establish his case by a preponderance of the evidence, it was proper to refuse a requested charge that, if the evi-

dence left the jury in doubt, they should return a verdict for the defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 542, 548–551; Dec. Dig. § 237.*]

3. BOUNDARIES (§ 37*)—ESTABLISHMENT— SUFFICIENCY OF EVIDENCE.

In trespass to try title, evidence *held* sufficient to warrant the jury in finding that the corner of one of the surveys in controversy was that located by a surveyor who testified for the plaintiff, and not that located by one who testified for the defendant.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

4. NEW TRIAL (§ 102*)—GROUNDS—NEWLY DISCOVERED EVIDENCE—MATERIALITY.

Evidence, discovered after the trial of an action of trespass to try title which consisted of the testimony of a surveyor, who testified for the plaintiff that he had discovered the bearing trees for a certain corner not in controversy, but belonging to the same group of surveys, to be as claimed by the defendant, but that he still contended that his location of another corner, which was in controversy, and concerning which he testified at the trial, was correct, did not require the granting of a new trial to the defendant, where it appeared from the original testimony that he did not dispute the location of the former corner, and his failure to give the testimony as to the finding of the trees was due to the failure of defendant to ask him concerning them.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 207, 210–214; Dec. Dig. § 102.*]

Appeal from District Court, Maverick County; W. C. Douglas, Judge.

Trespass to try title by F. Lehmann against Elizabeth Moore, individually and as guardian of G. Bedell Moore, a minor. Judgment for the plaintiff, and defendant appeals. Affirmed.

McFarland & Lewright, of San Antonio, and Ben V. King, of Eagle Pass, for appellant. J. R. Sanford, of Eagle Pass, and T. T. VanderHoeven, of San Antonio, for appellee.

MOURSUND, J. This suit was instituted by appellee against appellant in the form of trespass to try title. By agreement the issue was confined to the determination of the correct boundaries, as made and established by the original surveyor, between the abutting surveys owned by the respective parties. The trial resulted in a verdict and judgment awarding the plaintiff, Lehmann, the land in dispute.

[1] By the first assignment of error the sufficiency of the evidence to sustain the judgment is questioned; it being contended that plaintiff and defendant agreed that the north line and northeast corner of survey No. 72 was at the point designated by surveyor Whiteaker, and that by the adoption of the line established by surveyor Barker the line so agreed upon was disregarded. No evidence is shown in the statement from which an agreement as to the location of the lines in controversy could be found to have been made. Nor was any such issue submitted to the jury. The controversy was as to the line between surveys 75, 76, 77, 78, and

79 owned by appellant and survey No. 2 owned by appellee. It appears that surveys 72 to 80, inclusive, constitute a tier of surveys calling for each other, and surveyed in 1848 by the same surveyor; also that Whiteaker's location of the northwest corner of survey 72 was satisfactory to appellee and agreed to by him as correct, and his home tract was located in accordance therewith. There are seven surveys between No. 72 and No. 75 (fractional numbers being given some of the surveys); and, while the line of 72 was agreed upon as correct, such agreement could not bind appellee as to the lines in controversy in this suit. The assignment is overruled.

[2] There is no merit in the second assignment. The court instructed the jury that the burden of proof was upon the plaintiff to establish his case by a preponderance of the evidence, and it was proper to refuse a special charge to the effect that if the testimony left them in doubt as to the true location of the lines, to return a verdict for defendant. Railway v. Reagan, 34 S. W. 798; I. & G. N. Ry. Co. v. Villareal, 36 Tex. Civ. App. 532, 82 S. W. 1063; Railway v. Davis, 84 S. W. 669; Brewer v. Doose, 146 S. W. 323.

[3] The third assignment reads as follows: "The trial court erred in overruling defendant's motion for a new trial because the verdict of the jury establishing the boundary lines in question as they were located by surveyor Barker is erroneous and contrary to the evidence, in this: That the undisputed evidence shows that surveyor Whiteaker located the north line of survey 79 and the south line of survey 80 at a point where such line was run by the original surveyor to cross Los Moras creek, at a point where, owing to the rock formation of its bed, its location could not have changed since the making of the original survey, and that he found original bearing trees, at the northeast corner of survey No. 79, that this line, creek, and corner all corresponded with the field notes of the original surveyor who made all of the surveys called for as part of the western boundary of survey 2, and established mathematically correctly the location of all such surveys and of the western boundary lines of survey No. 2 as shown by Whiteaker's map, wherefore should so much of said judgment as establishes the western boundary of survey No. 2 be by this court set aside." It does not appear that Whiteaker found original bearing trees at the place he took to be the northeast corner of survey 79, but did find an original bearing tree at the place located by him as the southeast corner of survey No. 80, which corner, if the field notes be correct, should be 297 varas west of the northeast corner of 79. But Barker identified the southeast corner of 79 at a place from which a line running north would intersect a projection of the south line of No. 80 at a point only 76 varas from the point identified by Whiteaker as the southeast corner of No. 80. Barker testified to finding an old marked tree and a stump corresponding to the location of the bearing trees for the southeast corner of No. 79, and the jury accepted his theory that the place so identified by him was in truth the southeast corner of survey 79. If the corner as located by Barker be correct, then it appears that the surveyor who originally made the surveys made a mistake in the distance with respect to the north line of 79, or else in running north from the southeast corner of said survey he ran approximately 216 varas east of the true north course. Survey 79 calls to begin at the northwest or upper river corner of No. 78; thence east 3,836 varas, a marked corner; thence north 1,020 varas to a marked corner; thence west 3,495 varas to Los Moras creek, and 4,210 varas to river, another marked corner. Survey 80 calls to begin at northwest corner of 79; thence east 805 varas to Los Moras creek (which call does not correspond by 90 varas with the same call in the field notes of No. 79), and 3,913 varas to marked corner for southeast corner of No. 80. It appears that surveys 78, 79, and 80 were made on April 16, 1848, and that survey 77 was made on April 27, 1848, while surveys 76 and 75 were made on April 17, 1848. The date given for survey 77 is doubtless a mistake, and should be April 17th. The surveys purport to have been made from down the river, and survey 75 calls for its beginning at the upper corner of 74, while 76 calls for its beginning at the upper corner of 75, and thus each survey is constructed upon the one preceding it in number, but according to the field notes the last three surveys were made before those upon which they are constructed. As survey 79 calls to begin at the upper corner of 78, at the mouth of Los Moras creek, it is likely that such point was selected for the beginning point of the surveys in making the work upon the ground. The course pursued in making these surveys is not clearly enough defined to establish that no mistake was made in calling the distance between the southeast corner of No. 80 and northeast corner of No. 79 to be 297 varas, nor can it be said that, even if the northeast corner of 79 was originally located 297 varas east of the southeast corner of No. 80, it would necessarily disprove the correctness of Barker's contention regarding the location of the southeast corner of 79. Barker testified that, using the marked tree found by him at the place he identifies as the southeast corner of 79, and locating the corner therefrom, he found a burnt stump which would fit the bearing as to course and distance within a foot; that in his 12 years' experience he had never found bearing trees to fit field notes closer. He also testified that if the southeast corner of 79 was located at the point contended for by Whiteaker, one of the bearing trees would have been on the side of

a rock "juajilla" hill, where he saw no indication that any tree had ever grown. Neither surveyor was able to find any trees which he took to be bearing trees for the northeast corner of 79. Whiteaker did not consider the fact that the tree and stump at Barker's southeast corner of 79 corresponded so closely with the field notes to be important, contending that in a heavily wooded country a person could go anywhere and get two trees to fit a call, and that there was quite a lot of timber at this place. He also considered the fact that a larger tree than the marked one was closer to the place adopted, as the corner tended strongly to show that such marked tree was not a bearing tree.

We have considered all the testimony carefully and conclude that we would not be justified in holding that the evidence in favor of appellant's contention as to the location of the east line of No. 79 is of such character that we would be justified in setting aside the verdict. There was evidence from which the jury could reasonably find that the southeast corner of No. 79 was at the place identified by Barker, and, there being no means of identifying any place as the northeast corner of No. 79, except by running course and distance from the southeast corner of such survey and the northwest corner thereof, the northeast corner would be located at the intersection of the lines so run. By this assignment of error only the location of the east line of 79 is attacked, no contention being made that the southwest corner of survey 75 as located by Barker was not supported by evidence. The corners relied upon by Whiteaker were the southeast corner of No. 80, the northwest corner of 72, and the southwest corner of No. 74½, all of which, while persuasive in showing the location of the intermediate surveys, would be overcome by the actual location of the southwest corner of No. 75 and the southeast corner of No. 79, because from such corners the east lines of surveys 75 to 79 can be more accurately determined. The evidence supports the verdict, and the assignment is overruled.

[4] By the fourth assignment complaint is made because the court refused to grant a new trial on the ground that after the trial one of appellant's attorneys learned from witness Barker that said witness did go to the northeast corner of survey 79 and the southeast corner of survey 80, and found the bearing trees described by Whiteaker as having existed at said corners, and found Whiteaker's survey of said line to be correct. Before taking up the testimony of Barker, when called to testify upon the hearing of the motion for new trial, we wish to again call attention to the fact that Whiteaker did not identify any bearing trees for the northeast corner of No. 79, and Barker testified he did not find any bearing trees for said corner.

Barker testified during the trial that he located the northeast corner of No. 79 at a point 76 varas east of the southeast corner of No. 80, and that his corner was 3,240 varas from Los Moras creek. As Whiteaker testified that the northeast corner of No. 79 as located by Barker was about 81 varas east of the southeast corner of No. 80, it will be seen that the jury must have fully understood that Barker admitted the location of the southeast corner of No. 80 to be as claimed by Whiteaker. In testifying upon the hearing of the motion for new trial, he admitted finding the tree by which Whiteaker located the southeast corner of No. 80, and his belief that it was an original bearing tree for said corner, but contended the evidence was more conclusive as to the correctness of his location of the southeast corner of 79 than the evidence of the correctness of Whiteaker's location of No. 80. He again testified that he found no bearing trees for the northeast corner of No. 79. It appearing that upon the trial he did not dispute the location of the southeast corner of No. 80, and that his failure to testify to finding the bearing tree was caused solely by the failure of appellant's counsel to interrogate him upon that point, the court did not err in overruling the motion for new trial. The assignment is overruled.

The judgment is affirmed.