### HESS v. ROUSE et al. (No. 7391.)

Court of Civil Appeals of Texas. Austin.
Nov. 27, 1929.

Rehearing Denied Dec. 18, 1929.

**1078**

Wright, Yowell & Lewis, of San Angelo, for appellant.

J. A. Thomas, Lloyd Kerr, and Louis D. Gayer, all of San Angelo, for appellees.

BLAIR, J. Appellees recovered judgment against appellant for $8,467.50 as damages for the death of Mrs. Oral Minnie Rouse, wife and mother of appellees, resulting from a burn inflicted by appellant in administering an X-ray treatment to her body; hence this appeal.

The jury found that as a physician in the treatment of the deceased with the X-ray appellant "failed to use such care, skill and diligence as is ordinarily used by the average members of the medical profession in good standing in this locality, under the same or similar circumstances," and that such failure was the "natural, direct and proximate" cause of her death. The contention is not sustained that these special findings of the jury, which state the test of liability in this character of case, are not supported by the evidence.

Appellant was alleged to have subjected deceased to the rays from the X-ray machine of too great strength and not focused at the proper distance, and for too long a time, and without employing in connection with said machine a protector known as a filter, and without using proper care or taking proper precautions in various ways, unknown to appellees, but well known to appellant, for the purpose of relieving and protecting against the severity of such X-ray treatment, and that he so severely and seriously burned deceased's skin, the underlying flesh, muscles, and tissues, the exterior and interior portions of her abdomen and her intestines and other internal organs, as to result in her death. In support of these allegations of negligence, the evidence shows that the X-ray machine was owned by appellant and was under his exclusive management and control; that as a physician he administered three X-ray treatments to deceased's body, two a few days apart to her back, and the third a few days later to her abdomen, which resulted in what is known as a "third degree" X-ray burn, covering an area of about 4x7 inches, which in a few days became red, broke out in blisters of various sizes, and later the tissues, muscles, and flesh under the burned area sloughed off down to the lining of her intestines, and from which she died.

Several physicians, learned in the matter of X-ray treatment, testified that there were three recognized degrees of X-ray burns. The first degree burn is one in which only redness of the skin is produced over the exposed area; the second degree burn is one in which blisters of various sizes are produced over the exposed area; and the third degree burn is one in which not only blisters are produced, but in which the tissues, flesh, and muscles under the exposed area are burned and after a period of time slough away, passing down into the deeper tissues and muscles and even to the bone or internal organs, and from which the patient suffers great pain during the course of the burn, and usually dies. Deceased's burn ran the usual course of a third degree burn. Physicians also testified that, to the average member of the medical profession in the locality in question, and to the medical profession generally, there were well-known and established methods or rules for administering X-ray treatment, which, if observed, would render such treatment harmless and safe in so far as severe or serious burns are concerned; and, in substance, that a third degree burn was ordinarily the result of administering rays of too great strength or not focused at the proper distance, or for too long a time, or when the machine was used without a proper filter, or at all events from a failure of the physician to observe some established method or rule for administering X-ray treatment. One of these physicians, who examined deceased professionally for her burn, testified as follows: "I do not believe a deep injury like the one I saw would occur in just an ordinary treatment."

Several witnesses testified that appellant told them deceased's injury was caused from the X-ray burn. His office assistant testified that appellant told her during the course of his treatment of deceased for the burn that it was an X-ray burn, and from which she would die, and that about the time or shortly after deceased was burned appellant particularly warned witness to always be careful and see that the filter was on the machine when it was being used. Another witness testified that appellant told him at the time of the death of deceased that she died of the X-ray burn. Appellant did not deny having made these statements. He filed a general denial, and in support of it testified that he was trained in the matter of X-ray treatment, and that in treating deceased he used and observed all the methods and rules known to the medical profession, and to the best of his skill and ability administered the treatment under consideration. Physicians testified that occasionally the medical profession was confronted with a patient who possessed idiosyncrasy or supersensitiveness with respect to X-ray burns, which simply meant that one patient is more susceptible to an X-ray burn than the ordinary patient under similar conditions, due to color and thinness of skin of the patient, and in some instances to physical elements. However, idiosyncrasy with respect to deceased was fairly negatived because physicians testified that idiosyncrasy extended alike to all parts of the body and.

was ordinarily detected in the first or second treatment. The evidence is undisputed that deceased was not burned from the first two treatments, but from the third.

■ The evidence and circumstances above detailed are sufficient from which the jury might conclude that appellant failed to use that reasonable degree of care, skill, and diligence in treating deceased with the X-ray as is ordinarily used by the average members of the medical profession in good standing in the community where the injury occurred, under the same or similar circumstances, and that such failure was the direct and proximate cause of deceased's death, which is the test of liability in this character of case in this state. Hamilton v. Harris (Tex. Civ. App.) 223 S. W. 533; George v. Shannon, 92 Kan. 801, 142 P. 967, Ann. Cas. 1916B, 338; Shockley v. Tucker, 127 Iowa, 456, 103 N. W. 360.

■■ Several witnesses testified to the severity of the pain suffered by deceased from the burn during the period it was running its course, to declarations of pain and suffering made by deceased, and to physical evidences of her great pain and suffering, over appellant's objection that pain and suffering were not proper elements of damages, and that such evidence was therefor irrelevant, immaterial, and prejudicial. Appellees charged appellant with having negligently and so seriously burned deceased with the X-ray as to cause her death. They did not seek to recover for the pain and suffering of deceased, and the court did not include them as elements of damages submitted to the jury. By his ex parte depositions taken before the trial, appellant denied having burned deceased with the X-ray. It was therefore incumbent upon appellees to prove their allegations of negligence. Physicians testified that one characteristic of a third degree X-ray burn was the extreme pain suffered by the injured person during the period the burn was running its course. The law is well settled that evidence of pain and suffering, where material to any issue in the case, may be proved as original evidence tending to show the nature, symptoms, and extent of the injury, and that declarations of pain and suffering by the injured party are admissible as tending to show the bodily condition of such injured party at the time the expressions of pain and suffering were made. Wheeler v. Ry. Co., 91 Tex. 356, 43 S. W. 876; Houston & T. C. Ry. Co. v. Shafer, 54 Tex. 641; Lumbermen's Reciprocal Ass'n v. Adcock (Tex. Civ. App.) 244 S. W. 645.

■ Appellant contends that the court erred in not charging the jury that "the burden of proof was upon plaintiffs to establish their right to recover" by a preponderance of the evidence. In propounding each issue, the court instructed the jury to find the fact elicited from a preponderance of the evidence, and therefore no charge on the burden of proof

was necessary. Texas Power & Light Co. v. Bristow (Tex. Civ. App.) 213 S. W. 702; Davis v. Morrison (Tex. Civ. App.) 14 S.W. (2d) 297. Then, too, a charge to the jury that the burden of proof was upon plaintiffs to establish their right to recover is a general charge or instruction and not permissible where a case is submitted on special issues. Missouri-Kansas-Texas Ry. Co. v. Thomason (Tex. Civ. App.) 3 S.W.(2d) 106; Morris v. Davis (Tex. Civ. App.) 3 S.W.(2d) 109.

■■ The trial court did not err in overruling appellant's motion for a new trial on the ground of newly discovered evidence. Appellant alleged that he discovered after the trial that a Dr. Gowen had administered iodex and "antiphlogistine" to deceased's burn, which are interdicted in the treatment of X-ray burns, and which if used to any great extent would cause a breaking down of the tissues and lead to death of the patient. The evidence is undisputed that appellant treated deceased until her death, and certainly should have detected any improper treatment by other physicians who occasionally treated deceased when appellant was away, or to allay her great pain and suffering. Appellees filed their suit on May 31, 1928, alleging that they "paid other physicians besides the defendant in the treatment of deceased the sum of $50.00." The trial began on February 1, 1929, and continued through February 4, 1929, and on the first day of the trial appellee Rouse testified that he paid other physicians $50 in the treatment of his wife's burn. No inquiry was made by appellant as to whom these physicians were. Only two physicians lived at Christoval where appellee Rouse and deceased had resided for ten or twelve years prior to her death, and it was only a short distance from San Angelo, appellant's home, to Christoval. The only effort made by appellant in this connection was to ask a Dr. Perciful to ascertain what medicine, if any, deceased used on the burn, and that he reported that he had not been able to find out what had been used. Common reason should have suggested to appellant that in a case like this one it was very important to ascertain what medicine had been used by the other physicians whom appellees alleged they had employed to treat deceased's burn. The evidence simply shows that appellant did not exercise any degree of diligence to obtain this information. One essential to granting a new trial on the ground of newly discovered evidence is that the party claiming it could not by any reasonable degree of diligence have obtained it before the trial. Neal v. Whitlock, 45 Tex. Civ. App. 457, 101 S. W. 284; Moore v. Lehmann (Tex. Civ. App.) 165 S. W. 81; Schkade v. Western Union Tel. Co. (Tex. Civ. App.) 216 S. W. 1113; Vardeman v. Edwards, 21 Tex. 737; Kansas City, M. & O. Ry. Co. v. Cole (Tex. Civ. App.) 183 S. W.

`137; Thetford v. Modern Woodmen of America (Tex. Civ. App.) 273 S. W. 666.

Other propositions asserted are overruled as being without merit, and the trial court's judgment is affirmed.

Affirmed.

On Appellant's Motion for Rehearing.

Our attention is called to the fact that the following quotation from the opinion: "That as a physician he administered three X-ray treatments to deceased's body, two a few days apart to her back, and the third a few days later to her abdomen"—is incorrect, in that the evidence shows that the exposure to the abdomen was given first. The order in which the treatments were given is immaterial, but in the interest of accuracy we make the correction pointed out in the motion.