**AMERICAN EMPLOYERS' INS. CO. v. Mc-MICKLE et al.**

No. 7893.

Court of Civil Appeals of Texas. Austin.

Jan. 4, 1934.

Rehearing Denied Jan. 17, 1934.

J. W. Thomas, of Belton, and Thompson, Knight, Baker & Harris, Adair Rembert, and Robert Lee Guthrie, all of Dallas, for appellant.

A. B. Coffee, Jr., Barnes & Pierson, and Coleman Gay, all of Austin, for appellee.

BLAIR, Justice.

This suit arose as an appeal by appellant from the order of the Industrial Accident Board awarding appellee, Mrs. Harry Mc-Mickle, as the common-law wife of Harry McMickle, compensation for his death, which resulted from injuries received while in the course of his employment as a truck driver with Mrs. T. G. McCoy, who at the time carried a policy of workmen's compensation insurance with appellant company covering her employees. Appellant admitted liability on

the policy in suit to any legal beneficiary of Harry McMickle; but denied that appellee was his common-law wife. The jury found that appellee was the common-law wife or widow of Harry McMickle, deceased; and judgment was accordingly rendered for her.

Appellant admits that the evidence was suf-ficient to sustain the common-law marriage; but contends that the trial court erred in over-ruling its second application for a continuance and its motion for a new trial upon the ground of alleged newly discovered evidence to the effect that Harry McMickle was a negro, or a person of African descent, and prohibited by article 4607 from marrying a white wo-man, or a woman of Caucasian descent.

■ The application for continuance fail-ed to allege sufficient facts showing a com-pliance with the requisites of article 2168 for obtaining a continuance to secure absent tes-timony, and the overruling of the application was therefore a matter which addressed itself to the sound discretion of the trial court, and will not be revised on this appeal, no abuse of such discretion being shown. Hutson v. Cade (Tex. Civ. App.) 217 S. W. 438. The ap-plication particularly failed to allege facts showing the materiality of the absent testi-mony, and that same would be available on a later trial. It merely alleged that, if wit-ness Vann were present, he would testify that, during a quarrel between Harry McMickle and his wife, he heard him accuse her of be-ing a "half-Indian," to which she retorted, "your grandfather was a negro," and that Harry McMickle admitted this to be true. The application did not allege that the law prohibited a marriage between a half-Indian woman and a negro man; nor did it allege that appellee was a white woman; and nei-ther the pleadings nor evidence then in the record show appellee to be a white woman. These allegations of facts were necessary to show the materiality of the absent testimony. The statute requires that all necessary facts showing the materiality of the absent testi-mony shall be alleged in the application. It is said in the case of Stachely v. Peirce, 28 Tex. 328, that the "court could know the facts only as stated in the application."

The same rule applies to the testimony of witness Wilson, who was the only other wit-ness named in the application, and who, it was alleged, upon information and belief, would testify, if present, that he was foreman of Mrs. McCoy's truck drivers; that the "truck drivers working for Mrs. McCoy and other truck drivers with whom Harry Mc-Mickle associated refused to sleep with Harry McMickle at any place on the road where they spent the night; and that they would refuse to drink out of the same cup"; and that, if Wilson would not testify to the above facts, other witnesses could be procured who would do so, because "the above information is current gossip at Lockhart," where Harry McMickle resided at the time of and for some time prior to his death.

■ The above rule with regard to the neces-sity of alleging facts showing the materiality of the absent testimony is also applicable to the allegations of the application for continu-ance to the effect that "other witnesses" could be obtained who would testify that Harry Mc-Mickle was a person of African descent. These allegations that "other witnesses" could be obtained fail to meet the requisites of the statutes which provide that the witness or witnesses by whom the absent testimony is to be given shall be named, their residence shown, to what facts they are expected to tes-tify, and that their testimony will be avail-able at the later trial. Oilmen's Reciprocal Association v. Hayes (Tex. Civ. App.) 295 S. W. 675, 676.

■ Both the second application for contin-uance and the motion for a new trial upon the ground of newly discovered evidence, raising for the first time the defense of miscegenation to the common-law marriage between Harry McMickle and appellee, were properly over-ruled, because appellant failed to exercise proper diligence in discovering and obtaining the newly discovered evidence in time to use it on the trial of the case. The second appli-cation for continuance, filed on the second day of the trial, alleged that Harry McMickle was a negro, or of African descent. It did not allege that appellee was a white woman, though such might be inferred from the fact that it was alleged that the supposed com-mon-law marriage between her and Harry McMickle was void, because inhibited by arti-cle 4607. The motion for a new trial and the evidence offered in support of same tended to show that the mother of Harry McMickle was a light mulatto girl, that his father was a white man, and that appellee was a white woman. The question of the sufficiency of this alleged newly discovered evidence to probably change the verdict on another trial need not be determined, since the court prop-erly overruled the application for continu-ance and the motion for a new trial upon the ground of newly discovered evidence, because of want of diligence on the part of appellant to discover and obtain the evidence in time for use on the trial of the case. The ques-tion of diligence is so closely related to both the application for continuance and the mo-tion for a new trial that it will be discussed under one statement. The facts with regard to the diligence of appellant as alleged in the application for continuance and the motion for a new trial, and as shown by the testi-mony, the affidavits, and counter affidavits, adduced on the hearing of the motion for a new trial, are as follows:

Harry McMickle was killed in an automo-bile accident on May 27, 1929. Appellant was immediately notified of his death by his employer, Mrs. McCoy. Appellee had left

their home in Lockhart a few days prior to the death of Harry McMickle, and a wide search was instituted to discover her whereabouts; but this search proved unsuccessful, and after several days Harry McMickle was buried at Belton, where he met his death. In June, July, and August, 1929, the agents of appellant made investigation at Belton, where Harry McMickle met his death, and at Lockhart, where he resided at the time of his death, and found that he and appellee, both having the appearance of being white people, had lived at Lockhart for some five months as husband and wife, living and associating at all times with white people of good repute. Appellee, through her attorneys, filed a claim for compensation with the Industrial Accident Board within the six months after the death of Harry McMickle, and was awarded compensation. Appellant appealed from the award, filing this suit on March 22, 1930, Appellant desired to take the deposition of appellee, and on several occasions inquired of her counsel as to her whereabouts, and was given the last known address or addresses furnished them by appellee; but appellant's agents could not locate her at these addresses. For several months appellee's counsel did not know her whereabouts. In the early part of 1932, appellant's counsel located appellee at the home of her mother in Arkansas, and learned that for the several months preceding she had been confined in an institution for the insane; but that she had been released and seemed to be of sound mind at that time. Appellant made no effort to take her deposition at that time, though appellee refused to give any information concerning her case, stating that her counsel had advised her not to do so. Later appellant prepared interrogatories to take appellee's deposition, and appellee's counsel prepared cross-interrogatories. Sixteen days before the date of the trial, appellee's counsel notified appellant that appellee was in Austin, where her deposition might be taken. Appellant employed an attorney at Austin, who, together with appellee's counsel, were present when her deposition was taken. By her deposition appellee proved her common-law marriage with Harry McMickle in 1925, and continuing until his death in 1929. She also gave the names of numerous towns and villages where they had lived during their married life in Texas, Oklahoma, Arkansas, and Kansas, and in some instances the street address where they resided and the names of people with whom they associated, testifying that Harry McMickle was an oil field truck driver, and went from one field to another seeking employment during their marital life. The depositions of other witnesses were taken before the trial, showing the marital relation between appellee and Harry McMickle. In her deposition appellee testified that her husband was born near Navasota, Tex. After taking the deposition, appellant made no further investigation of the relationship of appellee and Harry McMickle.

On June 9, 1932, more than two years after the filing of the suit, and more than three years after the accident resulting in the death of Harry McMickle, and more than two years after appellant learned that appellee claimed to be the common-law wife or widow of Harry McMickle, and after several continuances of the case to give appellant an opportunity to investigate the relationship existing between Harry McMickle and appellee, the case proceeded to trial, all parties announcing ready. On that date, appellant alleged in its second motion for continuance, which was filed the second day of the trial, that it learned for the first time that Harry McMickle was a negro, or of African descent. The evidence also showed that appellant's investigators went to Lockhart in June, July, and August, 1932, and·talked with witness Wilson about the relationship existing between McMickle and appellee; and the application for continuance alleged· that this same witness Wilson, if present, would testify that the other truck drivers. refused to sleep with McMickle and to drink out of the same cup; and that such information was current gossip on the streets of Lockhart. If so, we do not see how appellant's investigators failed to discover the evidence during the more than three years they had the case under investigation.

Appellee testified in her deposition, sixteen days before the trial of this case, that Harry McMickle was born near Navasota, Tex. Appellant made no effort to go to his birthplace before the trial. After the trial appellant's agents went to Navasota, where they readily discovered several witnesses who testified by affidavit and in person on the motion for a new trial to facts which tended to show that Harry McMickle was a person of African descent, thus tending to establish the defense of miscegenation to the common-law marriage between appellee and McMickle, raised for the first time by the second application for a continuance.

Appellant does not claim that it could not have secured this newly discovered evidence in time for use on the trial of the case after learning from appellee's deposition that Harry McMickle was born near Navasota, if it had suspected that he was of African descent; but contends that it cannot be charged with lack of diligence for not going to Navasota before the trial, because nothing came to its attention until either the first or second day of the trial which would in any manner cause it to suspect that Harry McMickle was a person of African descent. This contention is not sustained.

The only contested issue in the case was the validity of the common-law marriage. All of the continuances were granted to give appellant an opportunity to investigate the true relationship existing between appellee

382

and Harry McMickle. Several impediments exist in law which inhibit a common-law marriage. One of these is miscegenation, which under the Texas law inhibits marriage between a negro and a white person. The exercise of diligence in preparing for trial of the only contested issue in the case would require that appellant ascertain from all information at hand whether the parties were competent to enter into a legal common-law marriage. The defense of miscegenation was available to appellant at all times. In determining the ancestry of one spouse to a common-law marriage, the birthplace of the spouse is of vital importance. In this case appellant knew for sixteen days prior to the. trial the birthplace of Harry McMickle, and could have known this fact several months prior to the trial, if it had taken appellee's deposition at the time it located her at the home of her mother in Arkansas. The facts stated show that appellant failed to exercise due diligence in discovering and obtaining for use on the trial of the case the alleged newly discovered evidence; and the trial court did not abuse its discretion in overruling both the application for continuance and the motion for a new trial. Article 4607, R. S. 1925; Weeks v. Lipp (Tex. Civ. App.) 48 S.W.(2d) 716; Hess v. Rouse (Tex. Civ. App.) 22 S.W. (2d) 1077; Schebesta v. Stewart (Tex. Civ. App.) 37 S.W.(2d) 781; Ferguson v. Jackson (Tex. Civ. App.) 248 S. W. 66; Kansas City, M. & O. Ry. Co. v. Cole (Tex. Civ. App.) 183 S. W. 137; Watson v. Blymer Mfg. Co., 66 Tex. 558, 2 S. W. 353; Peters v. Williams (Tex. Civ. App.) 271 S. W. 430; St. Louis, B. & M. Ry. Co. v. Davis (Tex. Civ. App.) 262 S. W. 923; Thetford v. Modern Woodmen of America (Tex. Civ. App.) 273 S. W. 666.

Appellant contends that the court erred in overruling its motion for a new trial on the ground of alleged improper argument of appellee's counsel, to the effect that the employee, and not the employer, in reality paid the premium for workmen's compensation insurance; and that the insurance company, having received the premium, loses nothing by being required to pay the compensation claim. Appellant contends that this argument was an attempt to compare the relative financial positions of the parties. We fail to see how the argument can be so construed; but, if so, then no injury could have resulted to appellant from the argument, because neither the liability nor the amount due on the policy in suit was contested.

The explanation in the argument of another of appellee's counsel as to why appellee was not present at the time was clearly provoked by the argument of appellant's counsel, and presents no error requiring a reversal of the case.

The trial court's judgment is affirmed.

Affirmed.